UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
**LEVON ALEKSANIAN, SONAM, LAMA, HARJIT KHATRA, Individually, and on Behalf of All Others Similarly Situated, and as Class Representatives,**

                            **Plaintiffs,**

                            -against-

**UBER TECHNOLOGIES, INC., UBER LOGISTIK, LLC, UBER USA LLC, jointly and severally,**

                            **Defendants.**
------------------------------------------------------------------------------x

19-cv-10308(AJC)

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LIMITED DISCOVERY

## INTRODUCTION

Plaintiffs submit the instant Memorandum of Law in support of their motion for limited discovery pursuant to the court's Order of August 18, 2020 granting leave to move for discovery regarding Defendants' pending Motion to Compel Arbitration ((Dkt. #19). After the moving papers, opposition and reply were submitted, the parties submitted supplemental authority and memoranda to the court regarding recently decided cases from foreign districts addressing the key issue in the pending motion: whether Plaintiffs are within the residual clause of Section 1 of the Federal Arbitration Act ("FAA"), as transportation workers "engaged in interstate commerce" and thus exempt from the mandatory arbitration under the FAA. See Cir*cuit City v. Adams*, 532 U.S. 105, (2001) Specifically, the supplemental authority addressed the issue of intrastate activities and whether "last-mile" transportation workers who perform intrastate deliveries (Amazon workers delivering out-of-state packages to intrastate recipients, and GrubHub local delivery workers), are persons "engaged in interstate commerce." See *Waithaka et al v. Amazon.Com, Inc., Amazon*

1

*Logistics, Inc.,* (First Cir. No. 19-1848, July 17, 2020, hereafter "*Waithaka*") and *Wallace v. Grubhub Holdings, Inc., et al.*, Nos. 19-1564 & 19-2156, --- F.3d ----, 2020 WL 4463062 (7th Cir. Aug. 4, 2020), respectively. After submitting such authority, at a conference with the court held on August 18, 2020, Plaintiffs were granted leave to bring the instant motion.

By this motion Plaintiffs seek information in the attached proposed Discovery Requests which address interstate trips and trips to airports/ transportation hubs relevant to whether Plaintiffs and the putative class "engaged in interstate commerce."[1] Specifically, Plaintiffs seek information highly relevant and narrowly tailored to the issues of:

- the portion of the putative classes' work, by hails or sales revenue, that is derived from actual interstate trips, by way of New York City and national data;
- the portion of the putative classes' work, by hails or sales revenue, that is derived from trips to airports and other interstate transportation hubs and thus in the flow of interstate commerce, by way of New York City and national data;
- the centrality of interstate commerce to the job description of the putative class as conceived of by Defendants' internal materials, documents, advertising.

As argued herein, such discovery is entirely appropriate, as it is responsive to the data placed at issue by Defendants' statistics offered in support of their Motion to Compel Arbitration. Plaintiffs merely seek analogous data that is appropriately tailored to the putative class of New York City drivers, given the economic and geographic particulars of New York City and New York City airports as interstate hubs as compared with the nation and New York State more generally. Documents of these sort are now routinely ordered to be produced in cases addressing this factual question in other jurisdictions. Further such discovery is not unduly burdensome and judicially efficient to produce at this point.

---

[1] Other threshold issues relevant to the application of the exemption under Section 1 such as the definition of the class and the issue of goods versus transport of passengers have been briefed in Plaintiffs' prior submission. Plaintiffs argue that this court should reach the same decision reached by the Third Circuit in *Singh*, infra, which held the other prongs satisfied and the exemption issue to turn on "engaged in interstate commerce."

**LEGAL STANDARD**

The Second Circuit in *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003) stated that the Court should apply the evidentiary standard applicable on a motion for summary judgment on a motion to compel arbitration.  As stated in *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 613 n.2 (E.D.N.Y. 2011), "[w]hile it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." See also *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764, 776 (3d Cir. 2013) (holding where there is a question about arbitrability the court should allow limited discovery on that issue before deciding a motion to compel arbitration).

As noted in the previously filed Affirmation of Zubin Soleimany, in Opposition to Defendants' Motion to Compel, Plaintiffs provided publicly available documents and information regarding Defendants to show that Plaintiffs are engaged in interstate commerce (See Exhibits to Soleimany Affirmation in Opposition to Notion to Compel Arbitration, Dkt. # 34). Nonetheless, as argued below, given Defendants' submissions, Plaintiffs would be prejudiced should they not receive clearly relevant and readily available data in Defendants' possession to rebut the misleading data set forth by Defendants in their motion.  Such is precisely the data sought by Plaintiffs here.

Specifically, in their response to Defendants' Motion to Compel Arbitration in this case, Plaintiffs, as the party opposing arbitration, were confronted with inapposite statistics which showed annual percentages of actual trips in which Uber drivers actually crossed state lines in delivering passengers to and from their chosen destinations.  Such data was a nationwide and

3

statewide sample only. No data regarding New York City was presented. Moreover no data regarding revenue generated from interstate trips nor data regarding intrastate trips in the flow of commerce to travel hubs such as airports, bus and rail terminals and the like was presented by Defendants. As argued herein, such data that Defendants failed to volunteer is "clearly relevant to the interstate commerce inquiry" and important for purposes of rebuttal.

Thus, Plaintiffs seek an order requiring Uber to provide the information in the discovery requests in Exhibit 1 to the Affirmation of Jeanne Mirer. These interrogatories and document requests seek information, crucially, regarding the New York City market and national sample of interstate trips. The requests further seek data regarding intrastate trips to airports and other interstate hubs for bus rail and waterways. Plaintiffs also request information regarding gross sales of these types of trips both locally and nationally. As discussed *infra*, such requests are narrowly tailored to the factual question of whether Plaintiffs and the putative class of New York City Uber drivers "engage in interstate commerce" through both interstate trips and intrastate activities in the flow of commerce. See *Waithaka*, *supra* (holding that purely intrastate package delivery was sufficiently in the flow of interstate commerce to render Plaintiff Amazon drivers "engaged in interstate commerce" for purposes of FAA exemption.)

While in the main, by this limited discovery request, Plaintiffs merely seek the correct dataset regarding interstate trips applicable to Plaintiffs and the putative class of New York City Uber drivers, given the developments in this area since *New Prime v Oliviera*, 139 S.Ct. 532 (2019) as discussed *infra,* intrastate activities may take on further significance in establishing interstate commerce and discovery on transportation hubs/airports is equally probative.

I. **AS AN INITIAL MATTER THE STATISTICS PUT FORWARD BY DEFENDANTS IN THEIR MOTION PLACE INTERSTATE COMMERCE AT ISSUE AND WARRANT DISCOVERY IN REBUTTAL, SUCH JURISDICTIONAL FACTS BEING IN DEFENDANTS' POSSESSION**

Here Plaintiffs seek discovery similar to the discovery ordered by the Third Circuit in *Singh*, *supra*. In that case the Third Circuit held:

> At this stage, a court may only make that determination if the complaint and incorporated documents suffice. If not, or if so and Singh's opposition to the motion to compel arbitration places the issue in dispute, discovery must be allowed before entertaining further briefing on the question. The latter course is warranted here. [*Singh v. Uber Techs. Inc.*, 939 F.3d 210, 226, 2019 U.S. App. LEXIS 27412, *31-32, 2019 WL 4282185]

Further in *Singh,* the Third Circuit stated that Plaintiff's opposition to the Motion to Compel had also placed the factual issue of interstate commerce in dispute by reference to Plaintiff's affidavit regarding his interstate trips. That the parties had placed such facts at issue was held to warrant discovery there.

Similarly, here, Defendants place such facts at issue, arguing "Plaintiffs bear the burden of showing that the class of personal transportation workers is *engaged in*—not merely affecting or influencing—interstate commerce." [Defendant's Memorandum of Law in Support of Motion to Compel Arbitration, Dkt. #20, page 11]

Further, quoting *Rogers v Lyft,* Defendants argue:

> [t]he work of drivers on Uber's app "predominantly entails intrastate trips, an activity that undoubtedly affects interstate commerce but is not interstate commerce itself." 2020 WL 1684151, at *6. "Although we can safely assume that some drivers (especially those who live near state borders) regularly transport passengers across state lines, the company is in the general business of giving people rides, not the particular business of offering interstate transportation to passengers." *Id*. "Interstate trips that occur by happenstance of geography do not alter the intrastate transportation function performed by the class of workers." *Id*.; *accord Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1289–90 (11th Cir. 2005) (Section 1 does not cover "incidental" interstate transportation, such as "the interstate 'transportation' activities of . . . a pizza delivery person who delivered pizza across a state line to a customer in a neighboring town").

> That persuasive analysis is backed up by the data. In 2019, the average Uber trip in the U.S. was 6.3 miles. Ex. 3 (Declaration of Juan Manuel Contreras) ¶ 5. In New York, the average Uber trip was shorter: 4.7 miles. *Id*. ¶ 9. Not surprisingly in light of the short distances, the overwhelming majority of Uber trips are intrastate. In 2019, 97.64% of Uber

trips nationally were intrastate. *Id*. ¶ 4. In New York, that percentage was 98.33%.3 *Id*. ¶ 8. In states where major cities are not near the state line, the percentages are even higher. In California and Massachusetts, the 2019 percentages of intrastate rides were 99.99% and 99.63%, respectfully. *Id*. ¶ 12.  [Defendant's Memorandum of Law in Support of Motion to Compel Arbitration, Dkt. #20, page 11]

Thus, Defendants have placed interstate commerce at issue while providing statistics relevant only to the entire nation and to New York State. No data relevant to New York City has been provided. Given the expansive geography of New York State, versus the New York City region where interstate travel between New York and New Jersey is often closer than travel between the boroughs, data unique to New York City is warranted.  Further, "Given that the borough of Manhattan 'draws more commuters than any other county in the country,' 'more workers commute from New Jersey to New York (nearly 400,000) than travel between any other states'  and Manhattan's geographic proximity  to New Jersey, such data regarding New York City is highly probative of the question of actual interstate travel by Plaintiffs and the putative class." See Affirmation of Jeanne Mirer. The production of such narrowly tailed and highly probative data is entirely appropriate and will aid the court in its analysis of the question of interstate commerce.

Moreover as to relevant intrastate data, as stated in the Affirmation of Jeanne Mirer, two of the busiest international airports—with the highest number of international trips in the country— are JFK Airport and Newark Liberty International, are serviced by the putative class.  Accordingly requests regarding travel to transportation hubs and airports are highly relevant.  See *Cunningham v Lyft*, No. 1:19-cv-11974, 2020 WL 1503220 (D. Mass. Mar. 27, 2020), infra (finding  Plaintiffs engaged in intetstate commerce based on airport trips in the flow of interstate commerce).

Defendants are in possession of such data and it is readily available to them. Plaintiffs should thus be afforded an opportunity to rebut the  inapposite data set forth by Defendants.

### II. WHILE PLAINTIFF HAS PROPOUNDED SIGNIFICANT EVIDENCE, THE QUESTION OF INTERSTATE COMMERCE MAY BE HIGHLY FACT SPECIFIC AND FACT DEVELOPMENT OF THE RECORD IS APPROPRIATE

As this Court should be aware, the subject matter of this litigation has been developing very quickly since the Supreme Court in *New Prime v Oliviera*, 139 S.Ct. 532 (2019) settled the question that the Court, not the arbitrator, decides in the first instance whether a case is arbitrable as a matter of law. Since the instant case has been filed, courts in other jurisdictions have decided a plethora of cases addressing the issue of whether certain transportation workers fall under the residuary exemption in the FAA, 9 U.S.C. § 1.

Indeed, since the initial briefs were filed in this case, the First Circuit decided *Waithaka et al v. Amazon.Com, Inc., Amazon Logistics, Inc.*, (First Cir. No. 19-1848, July 17, 2020) and affirmed the District Court's denial of Amazon's motion to compel arbitration of the claims of Plaintiff Waithaka on behalf of a class of Massachusetts Amazon delivery persons who did not cross state lines in the course of their deliveries of packages, which themselves has come from out of state. On the other hand, the Seventh Circuit in *Wallace v. Grubhub Holdings, Inc., et al.*, Nos. 19-1564 & 19-2156, --- F.3d ----, 2020 WL 4463062 (7th Cir. Aug. 4, 2020) ruled against delivery drivers who drove intrastate but delivered food that had likely come from other states to restaurants which prepared the food for delivery. Several cases in California involving Uber relied on a small percentages of interstate trips to deny that Uber drivers were engaged in interstate commerce while in Massachusetts the District Court in *Cunningham v Lyft*, No. 1:19-cv-11974, 2020 WL 1503220 (D. Mass. Mar. 27, 2020) found Lyft drivers to be engaged in interstate commerce in light of their role in taking passengers to and from airports which put them in the flow of interstate commerce. Given these highly fact-specific inquiries, Plaintiffs would in fact be prejudiced could they not set

forth data regarding some of the factual questions—such as airport trips—on which of the comparable cases turn.

### III. DISCOVERY HAS BEEN PERMITTED OR ORDERED *SUA SPONTE* IN MULTIPLE CASES ADDRESSING THE EXEMPTION ISSUE

The decisions of other courts in addressing this question is highly instructive. There use of jurisdictional discovery is entirely appropriate and in fact courts have ordered such discovery with some regularity.

Indeed, in *Olivera v New Prime*, discovery on the issue of employee status was permitted by the district court. See *Oliveira v. New Prime, Inc.,* 857 F.3d 7, 11-12, 2017 U.S. App. LEXIS 8474, *8. Further, the Third Circuit in *Singh v. Uber Techs. Inc*., 939 F.3d 210, 226, 2019 U.S. App. LEXIS 27412, *31-32, 2019 WL 4282185 remanded the case and ordered discovery precisely on the issue of interstate commerce after vacating the motion to compel at the District Court level.

Further, in *Sienkaniec v. Uber Techs*., 401 F. Supp. 3d 870, 872 (D. Minn. 2019) the Court asked:

> First, what is the "class of workers" to which Sienkaniec belongs? There is a strong argument that the "class of workers" to which Sienkaniec belongs is "all Uber drivers in the United States." After all, Uber drivers perform the same job for the same company pursuant to the same agreement. Notably, in *Lenz*, the Eighth Circuit seemed to treat the relevant class as consisting of all of those who performed the same job for the same employer. *See id*. at 353 ("a strike by commercial service representatives, while inconvenient for Yellow, would not disrupt interstate commerce or halt trucks from delivering the general commodities"). Second, how many of those within the class must transport goods or people across state lines—and how often must they do so—before the class is deemed to be "class of workers *engaged in . . interstate commerce*"? Is it sufficient if one member of the class has transported goods or people across a state line on one occasion? That seems unlikely. But what then is sufficient?

After referring to *International Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954 (7th Cir. 2012), in which the Seventh Circuit held that the transportation-worker exemption applied to truckers whose interstate deliveries comprised only a small proportion of

their total workload after permitting discovery on the issue (*Id*. at 958 ), the Court then stated it would benefit from the development of the factual record to address the question of the degree and frequency of crossing state lines to answer the question of engaging in commerce. Accordingly, the Court *sua sponte* requested Uber to provide information regarding

> 1 the total number of Uber trips nationwide, and the number of such trips that cross state lines;
> 2. the total number of Uber drivers nationwide, and the number of such drivers who have transported a passenger across state lines;
> 3. the total number of Uber trips that originate in Minnesota, and the number of such trips that cross state lines; and
> 4. the total number of Uber drivers in Minnesota, and the number of such drivers who have transported a passenger across state lines.

A similar result is warranted here, and while *Sienkaniec* did not address intrastate activities as in *Wallace and Waithaka*, given the latter recent rulings, inquiry into intrastate "last-mile" activities regarding transportation hubs are clearly within the scope of permissible limited discovery.

## IV.  **THE DISCOVERY IS NARROW IN SCOPE AND NOT UNDULY BURDENSOME.**

Uber has demonstrated that national and local statistics by year are readily available to it. It presented various statistics of this nature to the Court. See Dkt. # 20. Moreover data regarding interstate trips and airport trips by New York City drivers are data routinely collected by Defendants. It produces such data to authorities such as the Taxi and Limousine Commission in the course of its regular operations in New York City. Accordingly the eight interrogatories and two document requests attached here should not be burdensome to Defendants to produce given their narrow tailoring to the factual questions at issue. Further the scope of such inquiry is not unduly intrusive or time consuming and will not greatly delay a determination of the instant motion.

## V. DISCOVERY AT THE PRESENT STAGE IS IN THE INTEREST OF JUDICIAL ECONOMY

Additionally, discovery at the present stage prior to determination of the motion is in the interest of judicial economy, potentially obviating the path of *Singh,* where discovery was ordered only on remand.

## CONCLUSION

For the above reasons Plaintiffs respectfully request the Court grant their motion for limited discovery on the issue of their engagement in interstate commerce and permit further submission based on such discovery on the pending Motion to Compel Discovery (Dkt. #19).

Dated: New York, New York
September 1, 2020

                    Respectfully submitted,

                    MIRER MAZZOCCHI & JULIEN, PLLC

By:/s/_____
Jeanne Mirer and Ria Julien
1 Whitehall, 16th Floor
New York, NY 10004
(212) 231-2235
jmirer@mmsjlaw.com
rjulien@mmsjlaw.com
*Attorneys for Plaintiffs*


By: Zubin Soleimany
*Attorney for Plaintiffs*
New York Taxi Workers Alliance
31-10 37th Avenue, Suite 300
Long Island City, NY  11101
718-706-9892
zsoleimany@nytwa.org
*Attorneys for Plaintiffs*