UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------x
LEVON ALEKSANIAN, SONAM LAMA, HARJIT KHATRA,
and, Individually, on Behalf of All Others Similarly Situated, and
as Class Representatives,

                                              CASE NO.
                    Plaintiffs,               1:19-cv-10308-ALC

              -against-

UBER TECHNOLOGIES, INC., UBER LOGISTIK, LLC, UBER
USA LLC, jointly and severally,

                    Defendants.
-------------------------------------------------------------------------------------x

**BRIEF IN OPPOSITION OF DEFENDANTS
UBER TECHNOLOGIES, INC., UBER LOGISTIK, LLC, AND UBER USA LLC
TO PLAINTIFFS' MOTION FOR LIMITED DISCOVERY**

**INTRODUCTION**

This Court has everything it needs to decide Uber's motion to compel arbitration.  The record already contains data establishing that the vast majority of Uber trips during the putative class period were intrastate.  Under a line of recent cases addressing the exact question at issue here, that fact is dispositive: Plaintiffs are not within a class of workers "engaged in interstate commerce," and are therefore not exempt from the Federal Arbitration Act ("FAA").  Further, even if Plaintiffs were exempt from the FAA, the arbitration clause would still be enforceable under state law.  Plaintiffs do not suggest that discovery would be relevant to the state-law inquiry.

Despite abundant precedent establishing that the arbitration clause is enforceable, Plaintiffs seek to prolong this litigation by propounding discovery requests on irrelevant topics.  Plaintiffs' request for discovery would subvert the parties' agreement and undermine the FAA's purposes by forcing the parties to litigate in court, notwithstanding the parties' agreement *not* to litigate in court.  In addition, Plaintiffs' proposed discovery requests are overbroad, burdensome, and in

many cases bear no relationship to Plaintiffs' own (incorrect) theories about why the evidentiary record should be expanded. The Court should deny Plaintiffs' Motion for Limited Discovery and vindicate the parties' mutual agreement to resolve this dispute via arbitration.

## LEGAL STANDARD

"The [FAA] calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983). Although courts may consider relevant evidence when deciding a motion to compel arbitration, *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016), courts should also adhere to "Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," *Moses H. Cone*, 460 U.S. at 22; *see also Nicosia*, 834 F.3d at 228, 229 (noting that FAA "embod[ies] [a] national policy favoring arbitration . . . . founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes." (internal quotation marks and citations omitted)). Permitting "contentious discovery disputes" over arbitrability would "defeat[] the express goals of arbitration to yield economical and swift outcomes." *Citigroup Global Markets Inc. v. Abbar*, 761 F.3d 268, 276 (2d Cir. 2014).

Accordingly, "discovery is ordinarily not undertaken at . . . an early stage of a proceeding that is governed by an arbitration agreement." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 609 (3d Cir. 2002). If a motion to compel arbitration turns on legal rather than factual disputes, the court should decide the motion as a matter of law rather than prolonging proceedings with discovery. *See AMC Entertainment v. Entretenimiento GM de Mexico S.A. de C.V.*, 555 F. App'x 12, 14 (2d Cir. 2014) (declining to remand for discovery because "the parties do not dispute that they agreed to arbitrate, only the legal scope of that agreement, a matter that can be decided without further discovery"). If the Court concludes that additional fact-finding is needed, discovery should

be narrowly tailored and limited to the precise facts not currently in the record that the Court deems necessary to decide the motion. *See, e.g.*, *Singh v. Uber Technologies Inc.*, 939 F.3d 210, 218, 226 (3d Cir. 2019) (allowing a "restricted inquiry" into whether FAA Section 1 exemption applied, when no facts relevant to the issue had been proffered).

## ARGUMENT

The Court should deny Plaintiffs' motion because the existing record provides all the facts necessary to decide Uber's motion. Plaintiffs offer no sound basis for believing that additional facts will be helpful. Moreover, Plaintiffs' proposed discovery requests are overbroad, burdensome, and disconnected from Plaintiffs' own arguments as to why discovery is necessary.

**I.   The Existing Record is Sufficient to Decide Uber's Motion to Compel Arbitration.**

Discovery is unnecessary because Uber's motion establishes, as a matter of law, that the parties must arbitrate. First, Plaintiffs' motion for discovery solely concerns the enforceability of Plaintiffs' arbitration agreements with Uber under the FAA. But as Uber has shown, even if the FAA does not apply, Plaintiffs' claims are still subject to mandatory arbitration under New York law. Dkt. 20, at 21-25. Plaintiffs do not suggest that discovery is relevant to determining arbitrability under state law. The Court should not order discovery that will not affect the outcome. *See Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 380-81 (E.D.N.Y. 2016) (refusing to order discovery on Section 1 exemption when New York law required arbitration).

Even as to the FAA question, discovery is unnecessary because Uber has already provided all necessary data to the Court. Uber has submitted a declaration stating that of all trips fulfilled using the Uber Rides marketplace in the United States between 2013 and 2017 (the class period), 97.28% of the trips began and ended in the same state, while the other 2.72% started and ended in different states. Declaration of Juan Manuel Contreras, Dkt. 20-9, ¶ 4. For trips that began in New

York during that period, 96.91% ended in New York, while the other 3.09% ended in other states. *Id.* ¶ 8. The declaration also provides those statistics for trips taken in 2019. *Id.* ¶¶ 4, 8. In addition, the declaration provides statistics on average trip distances and durations for intrastate and interstate trips. *Id.* ¶¶ 5-6, 9-10. Finally, it recites that in 2019, 10.1% of all trips in the United States, and 6.8% of trips taken in New York, began or ended at an airport. *Id.* ¶¶ 7, 11.

No other information is needed to decide the motion. The evidentiary record shows that drivers using the Uber app occasionally cross state lines, or go to the airport, but they usually do not. To be sure, the parties dispute the *legal* inferences to be drawn from those facts. Plaintiffs contend that the fact that some drivers occasionally cross state lines or occasionally drive to the airport is enough to show that all drivers fall outside of the FAA. By contrast, Uber urges the Court to follow case law holding that drivers are not exempted from the FAA because they fall within a class of drivers primarily engaged in intrastate transportation, even if they occasionally cross state lines or go to the airport. *See Rogers v. Lyft, Inc.*, No. 20-cv-01938-VC, 2020 WL 1684151 (N.D. Cal. Apr. 7, 2020); *Capriole v. Uber Technologies, Inc.*, No. 20-cv-02211-EMC, 2020 WL 2563276 (N.D. Cal. May 14, 2020); *Grice v. Uber Techns., Inc.*, No. CV 18-2995 PSG (GJSx), 2020 WL 497487 (C.D. Cal. Jan. 7, 2020), *mandamus denied*, -- F.3d --, 2020 WL 5268941 (9th Cir. Sep. 4, 2020). But that is a legal dispute, not a factual dispute requiring additional record development. *See, e.g.*, *Grice*, 2020 WL 497487, at *9 n.2 (denying plaintiff's request for discovery on "the issue of whether his 'class of transportation workers is engaged in interstate commerce or sufficiently related work'" when "Plaintiff has not provided an explanation as to how discovery could change the outcome here or what further discovery is warranted").

Plaintiffs cite case law from other jurisdictions ordering discovery on the applicability of Section 1. Dkt. 45 at 8-9. But in those cases, the record was insufficient for the court to decide

the Section 1 issue.  For instance, in *Singh*, there were no statistics in the record regarding the percentage of trips that were interstate or that went to the airport.  Similarly, in *Sienkaniec v. Uber Techs.*, 401 F. Supp. 3d 870, 872 (D. Minn. 2019), the purpose of the discovery was to determine the fraction of trips, both nationwide and in Minnesota, that were interstate.  Here, Uber has already provided that information to the Court, both nationwide and with respect to New York State.  No authority holds that Plaintiffs are entitled to discovery beyond what is already in the record.

## II.     Plaintiffs Identify No Gaps in the Record Warranting Additional Discovery.

Plaintiffs argue that the record is deficient in two respects.  Both arguments lack merit.

First, Plaintiffs complain that the record includes only statistics on nationwide trips and New York *state* trips, rather than "data unique to New York City."  Dkt. 45 at 6.  This argument fails because "data unique to New York City" is irrelevant.  As Uber has already explained in both its motion to compel arbitration and its reply brief, Plaintiffs are incorrectly conflating the *putative class in this litigation* (New York City drivers) with the *class of workers for purposes of the FAA* (nationwide drivers).  The FAA's Section 1 exemption applies to "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  The enumerated job classes—"seamen" and "railroad employees"— are general job categories, rather than categories of workers from a particular geographic area.  Thus, under the reasoning of *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), a "class of workers engaged in interstate commerce" must also be a general job category, rather than a category of workers from a particular geographic area.  For this reason, the Section 1 inquiry turns on nationwide data, not New York City data.  Notably, no court has ever ordered discovery regarding interstate trips for drivers within a particular city.  Even *Sienkaniec*, which Plaintiffs cite as an instance of court-ordered discovery on Section 1's applicability, did not order discovery on Uber's business in Minneapolis, which is

half an hour from the Wisconsin border and less than two hours from the Iowa border.  401 F. Supp. 3d. at 872-73.  Plaintiffs have persistently refused to address this argument, and it dooms Plaintiffs' request for discovery because it shows that the data sought by Plaintiffs is irrelevant.

Moreover, Uber has already provided the relevant percentages for drivers in New York State, and Plaintiffs themselves point out that "during the relevant time period the only New York Market was New York City.  Uber did not expand into New York State until June 2017 . . . ."  Dkt. 35, at 16 n.6.  Thus, there will be no material difference between New York *State* data from 2013 to 2017—which Uber has already provided—and New York *City* data.[1]

Second, Plaintiffs assert that "JFK Airport and Newark Liberty International" are "serviced by the putative class," and that Plaintiffs therefore need data regarding "airport trips."  Dkt. 45, at 7, 8.  Such discovery is also unnecessary.  As just explained, the relevant class of drivers is *national* drivers, not *New York City* drivers, and Uber has already provided the percentage of national trips that begin or end at an airport—10.1%.

Moreover, Uber has already provided the percentage of New York State trips that begin or end at an airport—which is 6.8%, lower than the percentage of national trips.  Plaintiffs provide no reason to believe that New York City statistics would improve their position.

Most fundamentally, this discovery is irrelevant as a matter of law.  It is undisputed that drivers using the Uber app can drive to *any* local destination—bars, workplaces, residences— including airports.  This undisputed fact is sufficient to resolve the parties' Section 1 dispute.  In *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947), the Supreme Court held that "when local

---

[1] It is possible that there would be *de minimis* differences.  Uber began operating outside New York City in June 2017, so statistics regarding trips from 2013 to 2017 would include non-New York City trips from June 2017 to December 2017.  In addition, certain trips before June 2017 may have originated or ended in, *e.g.*, Long Island or Westchester County.  However, Plaintiffs have not shown that these differences would be significant or affect the outcome of this proceeding.

taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation" for Sherman Act purposes. *Id.* at 233. The Supreme Court did not remand for discovery on the precise percentage of trips to railroad stations. Several courts have applied *Yellow Cab*'s reasoning and held that drivers who use ride-sharing or delivery apps are not "engaged in interstate commerce" merely because drivers sometimes take passengers to the airport.[2] Those courts resolved that question as a legal matter rather than amassing a record of statistics on the precise percentage of airport trips.[3] Here, too, the Court should resolve Uber's legal argument rather than requiring additional discovery.

---

[2] *See Rogers*, 2020 WL 1684151, at *6 ("Nor does the fact that Lyft drivers frequently pick up and drop off people at airports and train stations mean that they are, as a class, 'engaged in' interstate commerce."); *Heller v. Rasier, LLC*, No. CV 17-8545 PSG (GJSx), 2020 WL 413243, at *7 (C.D. Cal. Jan. 7, 2020) ("[N]either Plaintiff … nor Uber is in the business of shipping goods across state lines, even though it delivers luggage and persons that once travelled interstate." (quotation marks omitted)); *Scaccia v. Uber Technologies, Inc.*, No. 3:18-cv-00418, 2019 WL 2476811, at *4-*5 (S.D. Ohio June 13, 2019) (rejecting argument that Uber driver engaged in interstate commerce, for Section 1 purposes, by picking up passengers to and from airports, and to and from Kentucky and Ohio); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900 (N.D. Cal. 2018) (rejecting argument "that DoorDash drivers are involved in the flow of interstate commerce because they facilitate the transportation of goods that originated across state lines" because "the FAA is more narrow"), *appeal docketed*, No. 18-17232 (9th Cir. Nov. 20, 2018); *see also Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 485 n.8 (S.D.N.Y. 2008) ("[C]ourts in th[e Second] Circuit have consistently found that workers not involved with the actual, physical movement of goods through interstate commerce do not fall under the residuary exemption, regardless of the workers' ultimate impact on interstate commerce.").

[3] None of these decisions suggested that discovery was necessary to decide whether the Section 1 exemption applied. *See Rogers*, 2020 WL 1684151, at *5 (applying "traditional tools of statutory interpretation"); *Heller*, 2020 WL 413243, at 9 n.3 (denying request for discovery because plaintiff had not "provided an explanation as to how discovery could change the outcome here or what further discovery is warranted,"); *Scaccia*, 2019 WL 2476811, at *4 (reaching decision through statutory construction); *Magana*, 343 F. Supp. 3d at 899-900 (same); *see also Capriole*, 2020 WL 497487, at *6-*9 (deciding question based on Uber declaration providing nationwide statistics on trips beginning or ending at airport).

Plaintiffs suggest that discovery on "intrastate 'last-mile' activities regarding transportation hubs" is appropriate because of two decisions on the Section 1 exemption's applicability to food and package delivery drivers, *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020) and *Wallace v. Grubhub Holdings, Inc.*, Nos. 19-1564 & 19-2156, --- F.3d ---, 2020 WL 4463062 (7th Cir. Aug. 4, 2020). *See* Dkt 45 at 7. But as Uber has previously noted, *Waithaka* resolved the distinct issue of whether last-mile delivery drivers who transport goods that *did* cross state lines fell outside of Section 1 because they did not *themselves* cross state lines. *See* Dkt. 38, at 7 n.6; *see also In re Grice*, 2020 WL 5268941, at *4 (finding that *Waithaka* was not "particularly helpful" to the argument that Uber drivers fall within Section 1 exemption, and that "*Waithaka*'s holding was limited to the § 1 exemption status" of Amazon Flex "last-mile" delivery drivers). *Wallace* is even less helpful to Plaintiffs, because as Plaintiffs acknowledge, *Wallace* held that Grubhub food delivery drivers were *not* exempt from the FAA. Dkt. 45 at 7; 2020 WL 4463062 at *2-*3. Moreover, *Waithaka* and *Wallace* resolved *legal* questions on Section 1's applicability; nothing in those opinions suggest that additional *facts* would be helpful.[4]

## III.   Plaintiffs' Proposed Discovery Requests Are Overbroad and Burdensome.

Although Plaintiffs argue that they require information regarding New York City (as opposed to New York State) trips and trips to airports and other transportation hubs, their discovery requests seek information entirely unrelated to those supposed gaps in the record. For instance, Plaintiffs seek information about the "total gross sales derived from Uber Trips." Dkt. 44-1, at 3. In addition to being vague,[5] this discovery request is wholly irrelevant to the Section 1 inquiry.

---

[4] *Cunningham v. Lyft, Inc.*, --- F.Supp.3d ---, 2020 WL 1503220 (D. Mass. Mar. 27, 2020), which Plaintiffs cite in support of their argument that Uber rides to interstate travel hubs make them exempt from the FAA, Dkt. 45 at 6, 7, also did not order discovery on the Section 1 exemption.
[5] In particular, it is unclear what "total gross sales" means in the context of a company like Uber, which offers a platform that allows passengers to compensate drivers for their rides.

Likewise, several discovery requests seek information regarding *total* numbers of trips.  Dkt. 44-1, at 3-4.  But the total number of trips is irrelevant to the character of drivers' work—the relevant information is the *proportion* of trips that are interstate, which Uber has already provided.

Moreover, contrary to Plaintiffs' assertions, complying with Plaintiffs' discovery requests would be highly burdensome.  For instance, two of Plaintiffs' interrogatories are as follows:

> **INTERROGATORY NO. 7:** Please provide the total number of Uber Trips taken to or from an interstate bus or rail hub, or interstate waterway piers for each year from 2013-2017: 1.) within Uber's New York City Market (including, but not limited to Pennsylvania Station, Port Authority Bus Terminal (Midtown), the George Washington Bridge Grand Central Terminal, the Pier 79, the Manhattan and Redhook Cruise Terminals, as well as Pier 11 on the East River) and; 2.) similar hubs within Uber's U.S. market as a whole.

> **INTERROGATORY NO. 8:** Please provide the total gross sales derived from Uber Trips taken to or from an interstate bus or rail hub, or interstate waterway piers for each year from 2013-2017: 1.) within Uber's New York City Market (including, but not limited to, Pennsylvania Station, Port Authority Bus Terminal (Midtown), the George Washington Bridge Grand Central Terminal, the Pier 79, the Manhattan and Redhook Cruise Terminals, as well as Pier 11 on the East River) and; 2.) similar within Uber's U.S. market as a whole.

These interrogatories seek data on trips to *all* hubs and piers in New York City, *and all other "similar" hubs and piers in the United States*.  These interrogatories would force Uber to accomplish the impossible task of cataloguing all of the innumerable transportation hubs in the United States.  In addition, the interrogatories are hopelessly vague, given the lack of any definition of "hubs" or "interstate piers."  In Washington, D.C., for instance, private buses to New York City pick up passengers at a bus stop[6]—would this qualify as a "bus hub"?  Does an "interstate pier"

---

[6]*See* *BestBus.com*, https://www.bestbus.com/site/modules/stops/?fi=14#:~:text=The%20pickup%20and%20drop%20off,street%20from%20the%20Skylight%20dinner.&text=The%20bus%20will%20pick%20up,P

refer only to locations where cruise ships dock, or does it refer to any pier where any boat that may be used for interstate travel docks?  Plaintiffs' interrogatories do not answer these questions.

Even if Uber could identify every single bus or rail hub and "interstate" pier in the United States, this data would be irrelevant, because Uber has no way of determining which trips are taken *for the purpose of* interstate travel.  For example, when a passenger requests a ride to Grand Central Terminal, Uber has no way of knowing whether that passenger actually took a train out of New York State; whether the passenger took a local subway to another location in New York City or a commuter rail to elsewhere in New York State; or whether the passenger did not take a train at all, and instead took an Uber to Grand Central because they work there, or wanted to meet a friend traveling into New York City, eat at Grand Central's restaurants, or to go to another location *near* Grand Central.  Accordingly, these interrogatories, which seek impossible-to-obtain data of limited, if any, value, would impose an undue burden on Uber.

No discovery is warranted here.  But if the Court does order discovery, it should be limited narrowly to the facts Plaintiffs claim they need: (a) data regarding the percentage of trips in New York City (as opposed to New York State) that crossed state lines, and (b) data regarding the percentage of trips in New York City (as opposed to New York State) that went to an airport.  Even this discovery is legally irrelevant, however, and Uber urges the Court to deny Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Limited Discovery.

ark%20%26%20Ride%2C%20East%20Lot.&text=50%20Massachusetts%20Ave%20NE%2C%20at,deck%20on%20the%202nd%20floor, (last accessed Sept. 9, 2020).

Dated:  September 15, 2020          Respectfully submitted,

s/ Jeremy Creelan
Jeremy M. Creeelan
Elizabeth A. Edmondson
919 Third Avenue
New York, NY 10022-3908
(212) 891-1600
JCreelan@jenner.com
EEdmondson@jenner.com

Adam G. Unikowsky (*pro hac vice forthcoming*)
Tassity S. Johnson (*pro hac vice forthcoming*)
1099 New York Avenue, NW Suite 900
Washington, DC 20001-4412
(202) 639-6000
AUnikowsky@jenner.com
TJohnson@jenner.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2020, the foregoing Brief in Opposition to Plaintiffs'
Motion for Limited Discovery was filed electronically through the Court's CM/ECF system.
Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing
system.

s/ Jeremy Creelan
Jeremy M. Creeelan
