USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: \_\_03/08/2021\_\_\_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**LEVON ALEKSANIAN,** *individually, on* :
*behalf of all others similarly situated, and as* :
*Class Representative*, **ET AL.,** :   **1:19-cv-10308 (ALC)**
:
            **Plaintiffs,** :   **ORDER & OPINION**
:
    -against- :
:
**UBER TECHNOLOGIES INC., ET AL.,** :
:
:
            **Defendants.** :
-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Levon Aleksanian, Sonam Lama, and Harjit Khatra (collectively, "Named Plaintiffs") bring this action individually, and on behalf of all others similarly situated (the "Putative Class"), and as class representatives (collectively, "Plaintiffs"), against Defendants Uber Technologies Inc., Uber Logistik, LLC and Uber USA LLC (collectively, "Uber" or "Defendants") asserting claims for breach of contract. Currently pending before the Court are Uber's motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA") and Plaintiffs' motion for discovery in connection with Uber's motion to compel arbitration. For the reasons discussed below, Plaintiffs' motion for discovery is **DENIED** and Defendants' motion to compel arbitration is **GRANTED**.¹

**PROCEDURAL HISTORY**

Plaintiffs commenced this action on November 6, 2019. ECF No. 1 ("Compl."). On May 1, 2020, Defendants filed a motion to compel arbitration pursuant to the FAA. ECF No. 19

---

¹ On March 2, 2021, Plaintiffs submitted a pre-motion conference letter in connection with a motion to amend their complaint to assert NYLL claims. ECF No. 57. On March 4, 2021, Defendants responded to Plaintiffs' letter. ECF No. 59. Plaintiffs' requests for a conference and leave to file a motion to amend their complaint are **DENIED**. As

("Defs.' Mot."). Plaintiffs opposed Defendants' motion to compel arbitration on July 3, 2020, ECF No. 35 ("Pls.' Opp."), and Defendants replied on July 31, 2020, ECF No. 38 ("Defs.' Reply"). On July 30, 2020, Plaintiffs filed a letter motion for leave to file a sur-reply or in the alternative supplement their opposition to Defendants' motion to compel arbitration, which this Court granted on August 6, 2020. ECF Nos. 37, 40. Plaintiffs filed a supplemental memorandum of law in opposition to Defendants' motion to compel arbitration on August 12, 2020. ECF No. 42. On September 8, 2020, Defendants filed a notice of supplemental authority in connection with their motion to compel arbitration. ECF No. 46.

The Court held a telephone status conference on August 18, 2020 wherein it ordered the parties to brief a motion for limited discovery in connection with Defendants' motion to compel arbitration. Aug. 18, 2020 Minute Order. Plaintiffs filed their motion for discovery on September 1, 2020, ECF No. 43 ("Pls.' Mot."), Defendants opposed the motion on September 15, 2020, ECF No. 47 ("Defs.' Opp."), and Plaintiffs filed a reply on September 22, 2020, ECF No. 48 ("Pls.' Reply"). On February 5, 2021, Plaintiffs filed a letter motion for leave to file supplemental authority relevant to both motions before the Court, ECF No. 49, which this Court granted on February 8, 2021, ECF No. 50. Plaintiffs filed the supplemental authority on February 9, 2021. ECF No. 51. On February 11, 2021, Defendants filed a letter motion for leave to file notice of supplemental authority in support of their motion to compel arbitration, ECF No. 52, which this Court granted on February 12, 2021, ECF No. 53. Defendants filed the supplemental

---

will be discussed in the opinion below, Plaintiff is required to arbitrate claims arising out of the Agreement, including NYLL claims. Thus, any amendment to the complaint would be futile. *See Oguejiofo v. Open Text Corp.*, No. 09-cv-1278, 2010 WL 1904022, at *3 (S.D.N.Y. May 10, 2010) ("Since the arbitration clause applies to this dispute, the court lacks subject matter jurisdiction over [plaintiff's] claim and any amendment by [plaintiff] would be futile."); *see also Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 704-705 (S.D.N.Y. 2017). The Clerk of Court is directed to terminate ECF No. 57.

authority on February 16, 2021. ECF No. 54.[2] Both motions currently before the Court are deemed fully briefed. After careful consideration, Plaintiffs' motion for discovery is **DENIED** and Defendants' motion to compel arbitration is **GRANTED**.

## BACKGROUND[3]

Uber is a "vendor of transportation services" who contracts with drivers that operate Black Car vehicles affiliated with bases owned by Uber and licensed by the New York City Taxi Limousine Commission. Compl. ¶¶ 47-52. The Uber smartphone application ("Uber app") allows riders to request these drivers through Uber's "centralized dispatch network." *Id*. ¶ 51. Named Plaintiffs are "present and former drivers who contracted with Uber to drive Black Cars as part of Uber's New York City fleet and who did not opt out of arbitration." *Id*. ¶ 2.

### A. Agreement and Arbitration Provision

Named Plaintiffs are parties to a Software License Agreement ("SLA") and/or Technology Services Agreement ("TSA") (collectively, the "Agreement").[4] As relevant here, the Agreement has a notice on the first page that it contains an Arbitration Provision:

---

[2] On March 2, 2021, Plaintiffs filed a letter motion for leave to file additional supplemental authority relevant to both motions before the Court. ECF No. 58. This request is **GRANTED**. The Court has considered this authority in the below decision and Plaintiff need not file it separately. The Clerk of Court is directed to terminate ECF No. 58.
[3] The following background is drawn from Plaintiffs' complaint ("Compl."), ECF No. 1, and the agreements between the parties containing the arbitration provisions at issue. While these agreements are not included or attached to Plaintiffs' complaint, "[a] complaint is deemed to include . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted). Plaintiffs reference these agreements in their complaint several times. *See, e.g.*, Compl. ¶¶ 91, 97-101, 106-113. While Plaintiffs do not cite to or attach these agreements to their complaint, these agreements are "integral" to the complaint. *See Perry v. N.Y. Law Sch.*, No. 03-cv-9221, 2004 WL 1698622, at *2 n.3 (S.D.N.Y. July 28, 2004) (citing *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000)) (finding arbitration agreement integral to the complaint on a motion to compel arbitration).
[4] Named Plaintiffs allege that they are parties to multiple agreements, including the SLA and TSA. Plaintiff Aleksanian accepted Uber's **Software License (and Online Services) Agreement** dated June 21, 2014. Gordon Decl., Ex. A ("SLA"); *see also* Compl. ¶ 24. Plaintiffs Lama and Khatra last accepted the **UBER USA, LLC Technology Services Agreement** dated December 11, 2015. Gordon Decl., Ex. D ("TSA"); *see also* Compl. ¶¶ 31, 40. In addition to these agreements, Plaintiffs allege that Mr. Aleksanian accepted agreements dated November 10, 2014 and April 3, 2015 (Gordon Decl., Ex. C), Compl. ¶ 24; Plaintiff Lama accepted an agreement dated April 3, 2015, *id.* ¶ 31; and Plaintiff Khatra accepted agreements dated July 2013, June 2014, November 10, 2014 and April 3, 2015, *id.* ¶ 40. Plaintiffs have noted some differences between the agreements; however, it appears that the agreements are substantially similar in regard to the relevant provisions for the purposes of this opinion.

> **PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW IN SECTION 14.3 CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. . . IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN SECTION 14.3 BELOW.**

SLA at 1; *see also* TSA at 1.[5] The Arbitration Provision provides:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective or representative action.**
>
> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.
>
> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to Your relationship with Uber, including termination of the relationship.

SLA § 14.3; *see also* TSA § 15.3.

Named Plaintiffs admit that they are parties to the Agreements and that they did not opt out of the Arbitration Provision. Compl. ¶¶ 24, 31, 40.

### B. Alleged Interstate Commerce

Plaintiffs allege that they were "expected to and regularly did transport passengers across state lines while working as [] Uber driver[s]," *id.* ¶¶ 25, 32, 41; *see also id.* ¶¶ 88-89 ("All Named Plaintiffs and Putative Class members were required to perform interstate trips . . . [and] did in fact perform interstate trips."), and that:

---

[5] The TSA is substantially the same as the SLA in regard to the provisions related to arbitration, with some minor differences not relevant here.

4

- "4.36% of the trips Aleksanian performed for Uber involved transporting a passenger across state lines. These interstate trips accounted for 10.12% of the total sales volume of Uber trips provided by Mr. Aleksanian," *id.* ¶ 27;

- "During [an] eight-week period from January 4, 2016 to February 22, 2016, 7.55% of the number of trips Lama performed for Uber involved transporting passengers across state lines. During the same time period, these interstate trips accounted for 19.78% of the total stated cost of rides Lama provided," *id.* ¶¶ 35-36;

- "[O]n information and belief, given [Khatra's] long history with Uber, his percentage of interstate trips is similar to other Named Plaintiffs and the putative class as a whole," *id.* ¶ 43.

Plaintiffs also allege that "Uber's New York City business model is structured to provide not only transportation within New York City and New York State, but interstate transportation as well" and that "Uber's policies contemplate the regular performance of interstate transportation work by its drivers." *Id.* ¶ 76. In support of these allegations, Plaintiffs cite to multiple Uber policies and actions including:

- The imposition of a $20 surcharge on all trips between NYC and New Jersey, *id.* ¶ 77;

- The advertising of flat rates for trips between Manhattan and Newark International Airport, *id.* ¶ 78;

- Policies stating that trips originating in New York City may last as long as four hours; more specifically that passengers may choose any destination within four hours of their pick-up location, and thus New York City-based Uber drivers may be dispatched to locations in New Jersey, Connecticut, Pennsylvania, Rhode Island, Massachusetts, Vermont, Delaware, or Maryland, *id.* ¶¶ 80-82;

- The maintenance of a "deactivation policy that stated that drivers' accounts could be permanently deactivated for excessive cancellation rates," making it so that "no driver had the option to exclude performing interstate trips," since it was not possible to determine the passenger's destination until after the passenger had entered the vehicle, and refusal to accept rides after learning of the passenger's destination counted as cancellations, *id.* ¶¶ 83-85;

- "The Uber app is programmed to anticipate interstate trips and makes pricing adjustments when it recognizes an interstate trip," *id.* ¶ 86.

5

### C. Alleged Breach of Contract Claims

Plaintiffs allege that Uber breached the Agreement to which they are a party by (1) deducting sales tax and a BCF surcharge from driver's earnings, as opposed to solely deducting Uber's fee per ride; and (2) engaging in an "Upfront Pricing" scheme.

The Agreement defines "Fare" as "the amount (including applicable taxes and fees) that the [contracting driver] is entitled to charge the User for the Ride . . ." *Id.* ¶ 97; *see also id.* ¶¶ 106, 109-110. The Agreement also required drivers pay Uber a "Fee" per ride. *Id.* ¶¶ 99, 111. This Fee would be deducted from the Fares earned by the drivers, and "the remainder of the Fare" would be remitted to the driver. *Id.* ¶¶ 101-102.[6] According to Plaintiffs, nothing in these contracts "empower[ed] Uber . . . to remove any additional amounts from the fare." *Id.* ¶ 103; *see also id.* ¶¶ 117-18. "Yet, at all times while these agreements were in force, Uber . . . collected the entire Fare from passengers, and remitted to drivers the Fare minus Uber's Fee, and additionally, minus amounts represented as sales tax and the BCF surcharge." *Id.* ¶ 104; *see also id.* ¶ 119.

Plaintiffs also allege that Uber engaged in an Upfront Pricing scheme "whereby the customer received a fare quote in advance of the trip," whereas drivers "continued to receive a fare based on the base charge, plus time, plus distance formula." *Id.* ¶ 124. "[T]he Upfront Price quoted to customers was often greater . . . [however], Uber retained the excess without sharing such monies with drivers." *Id.* ¶ 127. "Uber's failure to pass on to the driver the fare charged to the passenger minus its service fee is a violation of the contract." *Id.* ¶ 131.

Plaintiffs commenced this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf two putative classes: (1) Uber drivers seeking to recover

---

[6] In the November 2014, April 2015 and December 2015 agreements, Uber agreed to remit to drivers "the Fare less the applicable Service Fee; (b) the Tolls; and (c) depending on the region, certain taxes and ancillary fees." *Id.* ¶¶ 112-13. However, "Uber did not remit tax to [NYC] drivers . . . as New York law requires dispatching Black Car bases to collect and remit tax." *Id.* ¶ 116.

damages resulting from Uber's alleged unlawful deduction of a sales tax and BCF surcharge from driver's earnings, *id.* ¶ 136, and (2) Uber drivers seeking to recover damages resulting from Uber "calculating driver earnings on an amount less than the actual customer fare, according to their Upfront Pricing system," *id.* ¶ 146.

## STANDARD OF REVIEW

The FAA provides that "'[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable.'" *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (quoting 9 U.S.C. § 2). The FAA establishes "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), *superseded on other grounds by statute*, 9 U.S.C. § 16(b); *see also Epic Sys. Corp. v. Lewis,* --- U.S. ---, 138 S. Ct. 1612, 1621 (2018).

If the existence of the arbitration agreement itself it not at issue and the dispute is within the scope of the arbitration agreement, courts must "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). In deciding whether claims are subject to arbitration, the Court must determine (1) whether the parties entered into a valid agreement to arbitrate and (2) whether the claim falls within the scope of the agreement. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)).

"In a typical motion to compel arbitration, the Court would apply a standard similar to that of a summary judgment motion . . . and some discovery may be allowable or necessary."

7

*Lismore v. Societe Generale Energy Corp.*, No. 11-cv-6705, 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012) (citing *DuBois v. Macy's East Inc.*, 338 F. App'x 32, 33 (2d Cir. 2009)). However, "where the issue of whether the residual clause of § 1 of the FAA applies arises in a motion to compel arbitration, the motion to dismiss standard applies if the complaint and incorporated documents provide a sufficient factual basis for deciding the issue." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 218 (3d Cir. 2019); *see also Moss v. BMO Harris Bank, N.A.*, 24 F. Supp. 3d 281, 285 (E.D.N.Y. 2014) ("[W]hen a court considers the motion to compel before discovery has taken place, and in the context of a motion to dismiss, it treats the allegations in plaintiffs' complaint as true." (internal citations omitted)); *Moses*, 460 U.S. at 22 (noting "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible . . . with only restricted inquiry into factual issues."). If the documents do not suffice or if "plaintiff responds to the motion with additional facts that place the issue in dispute, the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing." *Singh*, 939 F.3d at 218 (internal citations and quotation marks omitted).

**DISCUSSION**

The core issue in this dispute is whether Defendants can compel arbitration of Plaintiffs' claims pursuant to the terms of the Agreement, and more specifically, whether Plaintiffs belong to a class of workers "engaged in interstate commerce" such that they are exempt from the FAA pursuant to § 1. Plaintiffs have filed a motion for discovery in connection with Defendants' motion to compel arbitration, seeking information on interstate trips and trips to airports/transportation hubs. Pls.' Mot. at 2. Because the Court concludes that this issue can be decided on the face of the complaint, the Court denies Plaintiffs' motion for discovery. The

Court also concludes that Uber drivers do not belong to a class of workers "engaged in interstate commerce." Thus, Plaintiffs are not exempt from the FAA pursuant to § 1. Lastly, the Court concludes that the parties entered into a valid agreement to arbitrate and that Plaintiffs' claims fall within the scope of that agreement. Therefore, the Court hereby grants Defendants' motion to compel arbitration.

**I.      Plaintiffs Are Not Entitled to Discovery on Issue of Whether Plaintiffs Are in a Class of Workers Engaged in Interstate Commerce**

In their motion for discovery, Plaintiffs seek information on interstate trips and trips to airports/transportation hubs, which Plaintiffs assert is relevant to deciding the issue of whether Plaintiffs belong to a class of workers "engaged in interstate commerce." Pls.' Mot. at 2. Because the Court concludes that this issue can be decided on the face of the complaint, the Court denies Plaintiffs' motion for discovery. *See Singh*, 939 F.3d at 218.

**II.     Plaintiffs Are Not Exempt from the FAA Pursuant to § 1**

The FAA was originally enacted in 1925 in order to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts." *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 480 (S.D.N.Y. 2008) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)) (internal quotation marks omitted). It provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. And, Sections 3 and 4 of the FAA "often require a court to stay litigation and compel arbitration 'accord[ing to] the terms' of the parties' agreement." *New Prime Inc. v. Oliveira*, --- U.S. ---, 139 S. Ct. 532, 537 (2019); *see also* 9 U.S.C. §§ 3, 4. However, the Supreme Court has held that a court should first decide whether § 1 applies before ordering arbitration. *New Prime*, 139 S. Ct.

9

at 537. Section 1 provides that "nothing" in the FAA "shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

### A. Plaintiffs Do Not Belong to a Class of Workers "Engaged in Interstate Commerce"

Contrary to Plaintiffs' assertions, Plaintiffs do not belong to "any other class of workers engaged in . . . interstate commerce." 9 U.S.C. § 1. In *Circuit City Stores, Inc. v. Adams*, the Supreme Court applied the maxim of *ejusdem generis* to hold that "any other class of workers" was limited to transportation workers. 532 U.S. 105, 114-15, 119 (2001). The statutory canon of *ejusdem generis* provides that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* at 114-15 (internal citations and quotation marks omitted). The Supreme Court reasoned that adopting the Ninth Circuit's view that § 1 exempted all employment contracts falling within the authority of § 2 would "fail[] to give independent effect to the statute's enumeration of the specific categories of workers" preceding the residual clause. *Id.* at 114. They also explained that the phrases "in commerce" and "engaged in commerce" (used in § 1) "are understood to have a more limited reach" than "involving commerce" or "affecting commerce" (used in § 2), and therefore it would not make sense for § 1 to exempt all employment contracts falling within the authority of § 2. *Id.* at 115-119. The Supreme Court emphasized that the § 1 exclusion provision should "be afforded a narrow construction," given the placement of the phrase "engaged in commerce" and the FAA's purpose of "overcom[ing] judicial hostility to arbitration." *Id.* at 118.

While it is clear that the residual clause is only applicable to transportation workers, it is less clear what kinds of transportation workers are exempt pursuant to § 1. While the Second

Circuit has not addressed the issue, several other Circuits have recently issued opinions offering some guidance. *See Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020), *petition for cert. filed*, 20-1077 (Feb. 08, 2021); *Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3d Cir. 2019); *In re Grice*, 974 F.3d 950 (9th Cir. 2020); *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020).

"[I]n determining whether the exemption applies, the question is 'not whether the *individual worker* actually engaged in interstate commerce, but whether *the class of workers to which the complaining worker belonged* engaged in interstate commerce.'" *Wallace*, 970 F.3d at 800 (quoting *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988)) (emphasis in original); *see also Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 915 (N.D. Cal. 2020) ("The plaintiffs' personal exploits are relevant only to the extent they indicate the activities performed by the overall class."), *appeals docketed*, 20-15689 (9th Cir. Apr. 16, 2020), 20-15700 (9th Cir. Apr. 17, 2020). The member of the class does not necessarily need to "engage in interstate commerce" or cross state lines to qualify for the exemption. *See Wallace*, 970 F.3d at 800; *see also Waithaka*, 966 F.3d at 26 (holding that "last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers 'engaged in . . . interstate commerce,' regardless of whether the workers themselves physically cross state lines"); *see also Rittman v. Amazon.com, Inc.*, 971 F.3d 904, 915 (9th Cir. 2020) (concluding that "§ 1 exempts transportation workers who are engaged in the movement of goods in interstate commerce, even if they do not cross state lines"), *cert. denied*, No. 20-622, 2021 WL 666403 (Feb. 22, 2021). "By the same token, someone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because [he] occasionally performs that kind

of work." *Wallace*, 970 F.3d at 800 (citing *Hill v. Rent-A-Center*, 398 F.3d 1286, 1289-90 (11th Cir. 2005)).

The next question is what it means to be "engaged in interstate commerce." Courts have previously recognized that "there is no[] clear definition or consensus of what constitutes a 'transportation worker' who is 'engaged in interstate commerce,'" *Heller v. Rasier, LLC*, No. 17-cv-8545, 2020 WL 413243, at *6 (C.D. Cal. Jan. 7, 2020), and that there is "a gap in the case law . . . between cases in which *no* member of a class transported goods or services across a state line and cases in which *all* members of a class did so," *Sienkaniec v. Uber Techs., Inc.*, 401 F. Supp. 3d 870, 872 (D. Minn. 2019) (emphasis in original). However, the recent cases out of the First, Third, Seventh and Ninth Circuits are helpful in determining what constitutes a "transportation worker" who is engaged in "interstate commerce." In *Wallace*, the Seventh Circuit held that "[t]o show that they fall within this exception, the plaintiffs had to demonstrate that the interstate movement of goods is a *central* part of the job description of the class of workers to which they belong." *Wallace*, 970 F.3d at 803 (emphasis added) (finding that Grubhub food delivery drivers were not exempt from the FAA pursuant to § 1).

The recent cases out of the First, Third and Ninth Circuit support rather than contradict the holding of the Seventh Circuit. The issue in *Waithaka* was whether Amazon last-mile delivery workers who never crossed state lines belonged to a class of workers who "engaged in interstate commerce." *Waithaka*, 966 F.3d 10. The First Circuit held that "[b]y virtue of their work transporting goods or people 'within the flow of interstate commerce,' Waithaka and other AmFlex workers are 'a class of workers engaged in . . . interstate commerce.'" *Id.* at 26 (internal citations omitted); *see also Rittman*, 971 F.3d 904 (reaching the same conclusion as the First Circuit through similar reasoning). In coming to that conclusion, the First Circuit reasoned that

12

"[t]he nature of the business for which a class of workers perform their activities must inform [the] assessment [of whether a class of workers is engaged in interstate commerce]." *Id.* at 22. The Ninth Circuit agreed with this reasoning in *In re Grice* and *Rittman*, approvingly quoting this exact same language from *Waithaka*. *In re Grice*, 974 F.3d at 956 (denying writ of mandamus because district court had not committed clear error in referring petitioner's case against Uber to arbitration); *Rittman*, 971 F.3d at 917-18. And, in *Singh*, the Third Circuit instructed that on remand, the district court might consider "information regarding the industry in which the class of workers is engaged" and "information regarding the work performed by those workers," among other factors, to determine whether a class of workers is "engaged in interstate commerce." *Singh*, 939 F.3d at 227-28.

Applying the standard from the Seventh Circuit, the Court holds that Plaintiffs do not belong to a class of workers "engaged in interstate commerce."[7] As the court in *Rogers v. Lyft* observed,

> [t]heir work predominantly entails intrastate trips, an activity that undoubtedly affects interstate commerce but is not interstate commerce itself. . . . [T]he company is in the general business of giving people rides, not the particular business of offering interstate transportation to passengers. Interstate trips that occur by happenstance of geography do not alter the intrastate function performed by the class of workers.

*Rogers*, at 452 F. Supp. 3d at 916 (citing *Hill*, 398 F.3d at 1290). Nothing in Plaintiffs' pleadings suggests otherwise.

In arguing that the exemption applies, Plaintiffs try to frame the class of workers as "New York City Uber drivers." *See, e.g.*, Pl. Opp. at 12. There is no basis for defining the class so narrowly—in fact the majority of cases involving Uber or Lyft define the class as "Uber drivers"

---

[7] Both sides are in agreement that Plaintiffs are transportation workers. *See, e.g.*, Pls.' Opp. at 12. Plaintiffs assert that the fact that Uber admits this "clearly brings Plaintiffs and the putative class within the ambit of the residual clause as defined in *Circuit City* . . . ." Pls.' Opp. at 23. This is plainly wrong. *Circuit City* held that §1 exempts transportation workers *engaged in interstate commerce*, not *all* transportation workers.

13

or "Lyft drivers." *See, e.g.*, *Rogers*, 452 F. Supp. 3d at 916 ("Lyft drivers, as a class, are not engaged in interstate commerce."); *Singh*, 939 F.3d at 225 ("Uber has never framed the issue as whether § 1 extends to Uber drivers specifically."); *cf. Sienkaniec*, 401 F. Supp. 3d at 872 (requesting information regarding "the total number of Uber trips that originate in Minnesota, and the number of such trips that cross state lines; and . . . the total number of Uber drivers in Minnesota, and the number of such drivers who have transported a passenger across state lines," but also requesting the same information on a *nationwide* basis).

Plaintiffs also assert that they "routinely transported passengers across state lines while performing services for Uber," *see* Pls.' Opp. at 14 (citing Compl. ¶¶ 25, 32, and 41), and cite to their individual drivers' ride statistics as proof that they belong to a class of workers engaged in interstate commerce. *See, e.g.*, Pls.' Opp. 16 ("Plaintiff Aleksanian received more than 10% of his income from interstate trips;" "Plaintiff Lama . . . received almost 20% of his income for the eight-week period in early 2016 from interstate trips."). However, these statistics are not dispositive as the central inquiry is whether the *class* of workers engaged in interstate commerce.

Plaintiffs also argue that they belong to a class engaged in interstate commerce because "a sizeable portion of their trips . . . include connecting passengers to other forms of interstate transportation." Pls.' Opp. at 18. However, Plaintiffs' alleged "role in connecting passengers to international and interstate transportation hubs," *id.*, does not support a finding that Uber drivers as a class engaged in interstate commerce. "It would be one thing if [Uber's] focus were the service of transporting people to and from airports . . . . But [Uber] is, in essence, a technologically advanced taxicab company, allowing people to 'hail' rides from its drivers from pretty much anywhere to pretty much anywhere." *Rogers*, 452 F. Supp. 3d at 916.

14

The Court disagrees with Plaintiffs' assertion that the Supreme Court's decision in *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984), is "limited to its facts" and that it does not weigh against finding that Uber drivers as a class were engaged in interstate commerce. Pls.' Opp. at 19. *Yellow Cab* involved claims against taxicab companies by the federal government for anti-trust violations for conspiring to limit the number of taxicabs that could operate in Chicago overall. The Court held that this alleged conspiracy did not involve the stream of interstate commerce and thus did not implicate federal antitrust laws:

> None of [the taxicab companies] serves only railroad passengers, all of them being required to serve "every person" within the limits of Chicago. They have no contractual or other arrangement with the interstate railroads. Nor are their fares paid or collected as part of the railroad fares. In short, their relationship to interstate transit is only casual and incidental. . . . [W]hen local taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation.

*Yellow Cab*, 332 U.S. at 231, 233. This reasoning is just as applicable here— the "relationship to interstate transit [of the class of workers to which Plaintiffs belong] is only casual and incidental." *Id.* at 231. Plaintiffs' citation to *Papetti v. Compagnie Nationale Air Fr.*, No. 97-cv-2921, 1998 WL 667932 (E.D.N.Y. Aug. 14, 1998), *aff'd*, 225 F.3d 646 (2d Cir. 2000), does not support Plaintiffs' argument either. In *Papetti*, the Court held that a plaintiff who "worked as a [sic] air cargo agent physically moving freight, which eventually made its way to various destinations throughout the United States and the world" was exempt from the FAA pursuant to § 1. *Id.* at *2. In that case, "interstate movement of goods [was] a central part of the job description of the class of workers to which [plaintiff] belong[ed]." *Wallace*, 970 F.3d at 803.

Plaintiffs also cite to multiple Uber policies and actions that they contend show that Plaintiffs belong to a class of workers engaged in interstate commerce, such as the fact that Uber

15

advertised flat rates for trips between Manhattan and Newark International Airport, Compl. ¶ 78, or that Uber imposed a $20 surcharge on all trips between NYC and New Jersey, *id.* ¶ 77. *See also id.* ¶¶ 80-86. However, just because Uber is set up to handle the occasional interstate trip does not mean that "interstate movement of goods is a central part of the job description of the class of workers to which [Plaintiffs] belong." *See Wallace*, 970 F.3d at 800, 803 ("[S]omeone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because [he] occasionally performs that kind of work.").

Plaintiffs' attempt to support their argument by asserting that Uber drivers provide more interstate trips than national bus lines, such as Greyhound, fares no better. Pls.' Opp. at 16-17. Unlike Plaintiffs, interstate movement of people is a central part of the job description of the class of workers to which Greyhound drivers belong. *See Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am., Local Div. 1210 v. Pa. Greyhound Lines*, 192 F.2d 310, 313 (3d Cir. 1951) (holding that a collective bargaining agreement between a union and bus line employees qualified as a contract of employment of a class of workers engaged in interstate commerce). The maxim of *ejusdem generis* supports our conclusion, as Greyhound drivers are much more akin to seamen and railroad employees than Uber drivers. *See Waithaka*, 966 F.3d at 17 ("[T]he residual clause must be interpreted in light of the specifically enumerated categories of workers that directly precede it, consistent with the *ejusdem generis* canon of statutory construction.").

Because the Court finds that Plaintiffs do not belong to a class of workers engaged in interstate commerce, we do not reach the questions of whether the Agreement is a contract of employment or whether transportation workers who are in the business of transporting passengers as opposed to goods can qualify for an exemption from the FAA pursuant to § 1.

### III. The Parties Entered Into a Valid Agreement to Arbitrate and Plaintiffs' Claims Fall Within the Scope of That Agreement

In determining whether claims are subject to arbitration, courts in this Circuit consider "(1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)). If these two conditions are met, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also* 9 U.S.C. § 4. When determining whether the parties have entered a valid agreement to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts," and evaluate the allegations "to determine whether they raise a genuine issue of material fact." *Sacchi v. Verizon Online LLC*, No. 14-cv-423, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) (internal citations and quotation marks omitted). Plaintiffs do not dispute that they accepted the Agreement which included the Arbitration Provision and that they did not opt out of the Arbitration Provision. Compl. ¶¶ 24, 31, 40. They also do not dispute that their claims against Defendants fall within the scope of the Arbitration Provision, which covers "disputes arising out of or related to this Agreement and disputes arising out of or related to [Plaintiffs'] relationship with Uber." SLA § 14.3; TSA § 15.3.[8]

---

[8] The SLA and TSA also specifically provide that the Arbitration Provision "also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law . . . and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims." SLA § 14.3; TSA § 15.3. This clearly covers the NYLL claims that Plaintiffs seek to assert in an Amended Complaint.

17

Because the parties entered into a valid agreement to arbitrate and the dispute comes within the scope of the arbitration agreement, the Court hereby **GRANTS** Defendants' motion to compel arbitration and **ORDERS** that the parties proceed to arbitration.

## CONCLUSION

For the reasons herein, Plaintiffs' motion for discovery is **DENIED** and Defendants' motion to compel arbitration is **GRANTED**. The case is hereby **DISMISSED**. *See Benzemann v. Citibank, N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order) (concluding that outright dismissal, as opposed to stay, is appropriate where none of the parties had requested a stay), *cert. denied*, 137 S. Ct. 618 (2017).

**SO ORDERED.**

**Dated:   March 8, 2021**
        **New York, New York**

                                    **ANDREW L. CARTER, JR.**
                                    **United States District Judge**