UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
**LEVON   ALEKSANIAN,   SONAM,   LAMA,   HARJIT
KHATRA, Individually, and on Behalf of All Others Similarly
Situated, and as Class Representatives,**

$\qquad$ **Plaintiffs,**

$\hfill$ **19-cv-10308(ALC)**

$\qquad$ **-against-**

**UBER   TECHNOLOGIES,   INC.,   UBER   LOGISTIK,   LLC,
UBER USA LLC, jointly and severally,**

$\qquad$ **Defendants.**
--------------------------------------------------------------------------------x


### PLAINTIFFS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION TO
### AMEND JUDGMENT


ZUBIN SOLEIMANY, Esq
New York Taxi Workers Alliance
31-10 37th Ave. Ste. 300
Long Island City, NY 11101 1
(718) 706-9892
Attorney for Plaintiffs

JEANNE E. MIRER, Esq.
RIA JULIEN, Esq.
Mirer, Mazzocchi, & Julien PLLC
Whitehall Street, 16th Floor
New York, NY 10031
(212) 231-2235
Attorneys for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................................ii

PRELIMINARY STATEMENT....................................................................................................1

STANDARD OF REVIEW ..........................................................................................................2

ARGUMENT ................................................................................................................................3

  I.      IT WAS CLEAR ERROR FOR THE  COURT TO NOT APPLY THE  SUMMARY
        JUDGMENT
        STANDARD  …………………….……………………………………………3

  II.     IT WAS CLEAR ERROR TO DENY PLAINTIFFS' MOTION FOR DISCOVERY ........5

  III.    THE COURT'S FAILURE TO EXAMINE NATIONWIDE DATA BEFORE IT
        REGARDING THE CLASS'S INTERSTATE TRIPS WAS IN CLEAR ERROR  ………7

  IV.   THE COURT OVERLOOKED THE PLAIN LANGUAGE OF THE FEDERAL
        ARBITRATION ACT, AND CONTROLLING CASE LAW DEFINING WHAT IT
        MEANS FOR TRANSPORTATION WORKERS TO BE "ENGAGED IN INTERSTATE
        COMMERCE."… ………………………………………………………………..9

  V.    THE COURT ERRONEOUSLY OVERLOOKED PRECEDENT PRESENTED
        REGARDING THE MOTOR CARRIER EXEMPTION IN THE *FAIR LABOR
        STANDARDS ACT*………………………………………………………………..13

  VI.   THE COURT COMMITTED CLEAR ERROR IN ITS APPLICATION OF *UNITED
        STATES V YELLOW CAB,* WHICH THE SUPREME COURT LIMITED TO ITS
        FACTS………………………………………………………………………… 15

  CONCLUSION..............................................................................................................................18

# TABLE OF AUTHORITIES

Page

CASES:

*Amazon.com, Inc. v. Rittmann*, 209 L. Ed. 121, _ S. Ct. _, 2021 WL 666403 (Feb. 22, 2021)…18

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960)....................................................................14

*Bensadoun v. Jobe-Riat,* 316 F.3d 171 (2d Cir. 2003)...................................................................3

*Brady v. Williams Capital Group, L.P.*, 14 N.Y.3d 459 (2010).....................................................19

*Brennan v. Schwerman Trucking Co.*, 540 F.2d 1200 (4th Cir. 1976)..........................................14

*Burgos v. Northeast Logistics,* 2017 WL 10187756 (E.D.N.Y. Mar. 30, 2017)....................12, 13

*Capriole v. Uber Technologies*,460 F. Supp. 3d. 919 (N.D. Cal. 2020)…………………………18

*Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015)............................14

*Circuit City Stores v. Adams,* 532 U.S. 105  (2001).........................................................1, 3, 9, 13

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984).....................................................16

*DuBois v. Macy's East Inc.*, 338 F. App. 32  (2d Cir. 2009)...........................................................3

*Garcia v. Fleetwood Limousine, Inc.*, 511 F.Supp.2d 1233 (M.D. Fla. 2007).............................14

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007).......................................................................19

*Gonzalez v. Lyft,* 2020 WL 7183573, 2020 U.S. Dist. LEXIS 231790 (D. N.J. Oct. 13,
2020), *aff'd*, 2021 WL 303024, 2021 U.S. Dist. LEXIS 17188 (D. N.J. Jan. 29,
2021)……………………………………………………………………………………10, 11, 12

*Haider v. Lyft*, 2021 U.S. Dist. LEXIS 62683 (S.D.N.Y. Mar. 31, 2021)..................6, 8, 9, 12, 17

*Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286 (11th Cir. 2005)............................................................11

*Islam v. Lyft, Inc.*, 22021 U.S. Dist. LEXIS 43839 (S.D.N.Y. Mar. 9, 2021)......................*passim*

*Int'l Bhd. of Teamster Local Union 50 v. Kienstra Precast, LLC*, 702 F.3d 954 (7th Cir.
2012)....................................................................................................................................*passim*

*Kennedy v. Equity Transp. Co.*, 2015 U.S. Dist. LEXIS 143565 (N.D.N.Y. Oct. 22, 2015)........15

*Lismore v. Societe Generale Energy Corp.,* No. 11-cv-6705, 2012 WL 3577833 (S.D.N.Y. Aug. 17, 2012)..................................................................................................................3

*Morris v. McComb*, 332 U.S. 422 (1947) ...........................................................................13, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ............................3

*Moss v. BMO Harris Bank, N.A.,* 24 F. Supp. 3d 281 (E.D.N.Y. 2014) ....................................3

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) ....................................................19

*Munafo v. Metro. Transp. Auth.*, 381 F.3d 99 (2d Cir. 2004) ....................................................2

*Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390 (S.D.N.Y. 2000) ..................2

*Resch v. Krapf's Coaches, Inc.*, 2013 WL4603011, 2013 U.S. Dist. LEXIS 123438 (E.D. Pa. Aug. 29, 2013)...........................................................................................................14

*Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020).....................................................18

*Rogers v. Lyft, Inc.*, *Rogers v. Lyft, Inc.*, 452 F. Supp. 3rd 904 (N.D. Cal. Apr. 7, 2020).................................................................................................................9, 12

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ........................................................2

*Singh v. Uber Techs.* Inc., 939 F.3d 210 (3d Cir. 2019) .....................................................3, 4, 6

*Smith v. Allstate Power Vac. Inc.*, 482 F. Supp.3d 40 (E.D.N.Y. 2020) ....................................13

*UBS AG ERISA Litig.*, 2012 U.S. Dist. LEXIS 51806 (S.D.N.Y. Mar. 23, 2012)........................3

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008)................................................................3

*United States v. Yellow Cab. Co.*, 332 U.S 218 (1947) ...............................15, 16, 17, 18

*Virgin Atl. Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245 (2d Cir. 1992)......................2

*Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335 (D. Mass. 2019)……………………7, 17, 18

*Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020)....................................8, 11, 12

*Walters v. Am. Coach Lines of Miami, Inc.*, 569 F. Supp.2d 1270 (S.D. Fla 2008)....................14

*Williams v. Tri-State Biodiesel*, 2015 U.S. Dist. LEXIS 7926 (S.D.N.Y. Jan. 23, 2015)............19

<u>STATUTES</u>:

9 U.S.C. § 1 ........................................................................................................... *passim*
FRCP 12(b)(6).................................................................................................1, 4
FRCP 59(e)......................................................................................................1, 2

<u>OTHER AUTHORITIES</u>:

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure
    § 4478.........................................................................................................................2

Black's Law Dictionary 622 (9th ed. 2009).....................................................................3

**PRELIMINARY STATEMENT**

Plaintiffs submit this memorandum of law in support of Plaintiffs' Motion to Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e). On March 8, 2021, this Court granted Defendant's Motion to Compel Arbitration on the grounds that Plaintiffs and Uber  drivers generally are not exempt from the application of the Federal Arbitration Act ("FAA"). See Dkt. # 60 (hereafter "Memorandum and Order"). Plaintiffs respectfully request that the Court reconsider its decision based on numerous clear errors of law apparent in the Court's decision.

As the Court acknowledged, prior to the Supreme Court's decision in *Circuit City*, courts had split on whether the residual exemption applies to all workers, or merely transportation workers. See *Circuit City v. Adams*, 532 U.S. 105 (2001). The text of the FAA as interpreted by the Supreme Court exempted only the contracts of employment of transportation workers engaged in interstate commerce. *Circuit City*, 532 U.S. 105, 121 (2001). This Court's Memorandum and Order clearly misstates the applicable legal standard and in doing so results in the manifest injustice of insulating Uber from its wage theft against 90,000+ New York City Uber drivers.

Among the clear errors committed by the Court are that it (1) failed to apply  the proper summary judgment standard on Defendants'  motion to compel, applying instead a FRCP 12(b)(6) standard disregarding the parties' factual submissions; (2) failed to apply the standard applicable to discovery in denying Plaintiffs' motion for discovery; (3) failed to consider the national factual data relevant to engagement in interstate commerce by a nationwide class, that showed  2.72% of all Uber trips are interstate—amounting to more than 36 million trips a year; (4) failed to apply the text of the FAA as written, *per Kienstra*; (5) failed to analyze any of the motor carrier

exemption cases, that like *Kienstra,* provide a basis for finding interstate commerce on the nationwide percentage of trips admitted by Defendants; and (6) misapplying *Yellow Cab* to the instant matter.

Plaintiffs respectfully submit, each of the above listed errors provides sufficient independent grounds for reconsideration of the Court's Memorandum and Order, and supports an amended judgment holding that Plaintiffs are transportation workers engaged in interstate commerce and thus exempt under Section 1 of the FAA.

## **STANDARD OF REVIEW**

A motion for reconsideration pursuant to FRCP 59(e) is appropriate where the movant can "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). *See also Range Road Music, Inc. v. Music Sales Corp.,* 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (granting the motion "is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion" (internal citations and quotations omitted). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478, at 790). See also *Munafo v. Metro. Transp. Auth.,* 381 F.3d 99, 105 (2d Cir. 2004). "Clear error" is present where a reviewing court would be "left with the definite and firm conviction that

a mistake has been committed.' *United States v. Cavera*, 550 F.3d 180, 205 (2d Cir. 2008); see also Black's Law Dictionary 622 (9th ed. 2009) (noting that "clear error" is error that is "unquestionably erroneous"). Similarly, a district court commits a "manifest injustice" where its error was "direct, obvious, and observable." *In re UBS AG ERISA Litig*., 2012 U.S. Dist. LEXIS 51806, *11, 2012 WL 1034445 (S.D.N.Y. Mar. 23, 2012) (citing Black's Law Dictionary 1048).

## ARGUMENT

I.    **IT WAS CLEAR ERROR FOR THE COURT TO NOT APPLY THE SUMMARY JUDGMENT STANDARD**

Case law is clear in this Circuit that when considering a motion to compel arbitration, the Court should apply a standard similar to that applicable to a motion for summary judgment.   See, *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). This Court acknowledged this standard when stating:

> "In a typical motion to compel arbitration, the Court would apply a standard similar to that of a summary judgment motion . . . and some discovery may be allowable or necessary." *Lismore v. Societe Generale Energy Corp*., No. 11-cv-6705, 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012) (citing *DuBois v. Macy's East Inc*., 338 F. App. 32, 33 (2d Cir. 2009)). However, where the issue of whether the residual clause of § 1 of the FAA applies arises in a motion to compel arbitration, the motion to dismiss standard applies if the complaint and incorporated documents provide a sufficient factual basis for deciding the issue. *Singh v. Uber Techs. Inc*., 939 F.3d 210, 218 (3d Cir. 2019); see also *Moss v. BMO Harris Bank, N.A*., 24 F. Supp. 3d 281, 285 (E.D.N.Y. 2014) ([W]hen a court considers the motion to compel before discovery has taken place, and in the context of a motion to dismiss, it treats the allegations in plaintiffs complaint as true. (internal citations omitted)); *Moses*, 460 U.S. at 22 (noting Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible . . . with only restricted inquiry into factual issues.). ***If the documents do not suffice or if the plaintiff responds to the motion with additional facts that place the issue in dispute, the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing****. Singh*, 939 F.3d at 218" [Emphasis added]. [Memorandum and Order, pages 7, 8]

However, the Court did not cite to the next sentence quoted from *Singh*, where the *Singh* Court stated: "**The motion to compel arbitration is judged under a summary judgment standard if it is renewed after this inquiry.**" *Id.* **at 216.** Thus, despite this precedent, and the fact that Defendants' motion was supported by factual affidavits, and Plaintiffs responded with additional facts that placed the Defendants' facts in dispute, this Court erroneously applied a FRCP 12(b)(6) motion to dismiss standard to this case. *See* Memorandum and Order, page 8 (deciding the motion decided "on the face of the complaint.")

Specifically, Uber's Motion to Compel Arbitration challenged Plaintiffs' claim they were part of a class of transportation workers engaged in interstate commerce. Defendants supported their motion with an affidavit citing statistics with the percentage of driver trips involving the crossing of state lines. See Dkt. # 20-9, Contreras Affidavit. In response Plaintiffs filed affidavits with supporting documents showing the vast numbers of interstate trips both in New York and nationally which Uber drivers take, and projecting revenue from the trips that cross state lines, and/or connect passengers to interstate travel hubs like airports which support their claim that they are transportation workers engaged in interstate commerce. *See* Dkt. # 34, Soleimany Declaration. Plaintiffs also filed discovery requests for both local and national data allowing for Uber's claim that the class of workers Plaintiffs were part of was a class of all Uber drivers. Rather than follow the standard, consider the facts presented in Plaintiffs' opposition to the Motion to Compel, and grant Plaintiffs' requests for discovery, the Court found that the Complaint and incorporated documents provide a sufficient factual basis for deciding the issue, and decided the case on a FRCP 12(b) (6) standard.

In  making this erroneous decision, the Court overlooked extensive factual allegations which should have resulted in a different outcome.  Thus, the Court committed clear error by

applying a motion to dismiss  standard  limiting its analysis to allegations on the face of the complaint.

## II.  IT WAS CLEAR ERROR TO DENY PLAINTIFFS' MOTION FOR DISCOVERY

Relatedly, by its Memorandum and Order compelling arbitration, the Court also denied Plaintiff's motion for discovery, stating:

> "Plaintiffs have filed a motion for discovery in connection with Defendants' motion to compel arbitration, seeking information on interstate trips and trips to airports/ transportation hubs. Pls/ Mot. At 2. Because the Court concludes that this issue can be decided on the face of the complaint, the Court denies Plaintiffs' motion for discovery." [Memorandum and Order, page 8.]

In so holding, the Court committed clear error by taking action directly contravened by the applicable standard it set forth (quoted above), which entitled Plaintiffs to discovery based on their having "respond[ed] to the motion with additional facts." Memorandum and Order, page 8.

The Court not only committed clear error by denying Plaintiffs' discovery as warranted by the standard the Court purported to apply, but also the Court denied Plaintiffs access to the very data  that may have changed the outcome of the Court's determination on the Motion to Compel. Indeed, after denying Plaintiffs' motion for  discovery, the Court held that Plaintiffs are not part of a class of workers exempt from  arbitration under Section 1 of the FAA because  the  statistics alleged regarding Plaintiffs' own interstate travel "are not dispositive as the central inquiry is whether the *class* of workers engaged in interstate commerce."  Memorandum and Order, page 14. That is, the  Court barred access to the class-wide data requested in order to establish being part of a class of workers engaged in interstate commerce—data to which Plaintiffs should be entitled— and then, in a clear contradiction,  denied the exemption based on insufficient data related to the

class. Such reasoning demonstrates "manifest injustice" as the flaws are "direct, obvious, and observable."

Specifically, Plaintiffs made ten discovery requests, in the form of eight interrogatories and two document requests tailored to determining:

(1) the percentage of nationwide and New York City trips that were interstate in 2013-17 (which Plaintiffs allege relates the scope of the class of workers)[1];
(2) the percentage of nationwide and New York City trips that were airport trips in 2013-17[2];
(3) the percentage of nationwide and New York City revenue that was derived from airport trips in 2013-17[3];
(4) the percentage of nationwide and New York City revenue that was derived from interstate trips in 2013-17;[4] and
(5) Plaintiffs also sought the absolute number of trips and amount of revenue derived from trips to transportation hubs and documents concerning interstate trips, nationwide and in New York City.[5] [Reply Memorandum of Law In Support Of Motion for Discovery, Dkt. # 48, page 1].

Thus, data crucial to the Court's evaluation of the facts—and discovery to which Plaintiffs are presumptively entitled—regardless of the scope of the class, were denied to Plaintiffs.

Finally, it is important to note that while other courts in this district have denied Defendant Lyft's motions to compel arbitration under the FAA while also denying Plaintiffs' motions for discovery, such denials do not contravene the rule in *Singh*. Where, as in *Islam v Lyft*, 20-cv-3004 (RA) (Dkt. #43) (hereafter the "*Islam* Decision") and *Haider et al. v Lyft*, 20-cv-02997(AJN) (Dkt. #62) (hereafter the "*Haider* Decision"), Plaintiff(s) had met and superseded the standard for placing arbitrability "at issue," and in fact demonstrated engagement in interstate commerce as to the class of transportation workers, no further discovery is needed to satisfy a finding that a

---

[1] Interrogatories 1 and 5, providing denominator and numerator, respectively.
[2] Interrogatories 1 and 3, providing denominator and numerator, respectively.
[3] Interrogatories 2 and 4, providing denominator and numerator, respectively.
[4] Interrogatories 2 and 6, providing denominator and numerator, respectively.
[5] Interrogatories 7 and 8 and Document Requests 1 and 2.

Plaintiff is within the scope of Section 1 of the FAA.  Where a court deems the submissions insufficient, however,  and a Plaintiff has placed the exemption at issue, they are entitled to discovery in order to see if they might meet the standard for showing engagement of interstate commerce. Failure to provide such is clear error.

### III.   THE COURT'S FAILURE TO EXAMINE NATIONWIDE DATA BEFORE IT REGARDING THE CLASS'S INTERSTATE TRIPS WAS IN CLEAR ERROR

With respect to the motion to compel, the Court proposed a two-step analysis looking first to "whether *the class of workers to which the complaining worker belonged* engaged in interstate commerce" (Memorandum and Order, page 11, citing *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335 (D. Mass. 2019)) and second, "what it means to be "engaged in interstate commerce." Memorandum and Order, page 12 . While the Court entertained the question of class-wide versus individual activity and thus the scope of the class, it failed to actually define the scope of the class. Moreover while the Court appeared to reject a geographically circumscribed class,  it never announced the scope of the class as nationwide, and failed to apply any factual analysis to such tacit class.

Even if the Court tacitly endorsed a nationwide class, however, the Court committed clear error in failing to analyze any data whatsoever regarding actual interstate trips made by Uber drivers, while these facts were available to the Court and admitted by Defendants.   Specifically, Defendants admitted:

> Of all trips fulfilled using the Uber Rides marketplace in the United States between 2013 and 2017, 97.28% of these trips began and ended in the same state, **while the other 2.72% of all such trips started and ended in different states....** Additionally, only 10.1% of all

trips taken in the United States in 2019 began or ended at an airport.  [Dkt. # 20-9, Contreras Affidavit] [emphasis added].

That is, while the Court found the Plaintiffs' own interstate crossing "not dispositive of the class," (see Memorandum and Order, page 14) and rejected a New York City wide class, the Court failed to take the necessary step of looking to the available data regarding the Court's  preferred class, to determine whether such nationwide class engaged in interstate commerce.

To do so the Court would have had to discuss the  2.72% of trips made interstate by Uber drivers each year—which Plaintiffs allege amount to tens of millions of trips annually—and analyze such statistics with respect to the putative nationwide class. **The Court's decision is entirely silent on this most probative question.** Indeed  such  data belies the Court's statement that  "just because Uber is set up to handle the occasional interstate trip does not mean that 'interstate movement of goods is a central part of the job description of the class of workers to which [Plaintiffs] belong.' *See Wallace*, 970 F.3d at 800, 803." Memorandum and Order, page 16. There is nothing "occasional" about 36 million trips a year (see Plaintiffs' Opposition to Motion to Compel Dkt #  35, page 17), which  2.72% of all trips nationwide amounts to. Indeed, Uber's "fare schedules, advertisements, and guidelines for drivers reflect that interstate travel is a regular part of its business." *Haider v. Lyft*, 2021 U.S. Dist. LEXIS 62690, at *4 (S.D.N.Y. Mar. 31, 2021). Indeed such percentages are consistent with those that justified a finding of Section 1 exemption in *Int'l Bhd. of Teamster Local Union 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 958 (7th Cir. 2012) (hereafter "Kienstra"), which  was  cited  approvingly  in *Wallace, supra*. Further such percentages were recently endorsed in this district by two cases decided subsequent to the Court issuing its Memorandum and Order. See *Islam v Lyft,* 20-cv-3004 (RA) (Dkt. #43) (hereafter the

"*Islam* Decision"); See also *Haider et al. v Lyft,* 20-cv-02997(AJN) (Dkt. #62) (hereafter the "*Haider* Decision") (both finding FAA exemption under Section 1 for a nationwide class based on approximately 2% of rides being interstate). **To be clear, the precise data set —nationwide interstate trips annually— that formed the ultimate basis of the decisions in *Kienstra, Islam and Haider* were not considered by the Court here, despite the fact that such data was included in the motion papers.** That such facts could have been dispositive, if considered, should be abundantly clear. The failure to consider such was clear error.

Similarly, on the issue of flow-of-commerce, the Court dispensed with such factual analysis holding that Defendants are in the business of "giving rides." Memorandum and Order, page 13, (citing *Rogers v. Lyft, Inc., Rogers v. Lyft, Inc.,* 452 F. Supp. 3rd 904 (N.D. Cal. Apr. 7, 2020)). Nowhere did the Court analyze the fact that "10.1% of all trips taken in the United States in 2019 began or ended at an airport." Dkt. # 20-9, Contreras Affidavit. By failing to analyze such facts as to a nationwide class, the Court has committed clear error.

**IV.   THE COURT OVERLOOKED THE PLAIN LANGUAGE OF THE FEDERAL ARBITRATION ACT, AND CONTROLLING CASE LAW DEFINING WHAT IT MEANS FOR TRANSPORTATION WORKERS TO BE "ENGAGED IN INTERSTATE COMMERCE."**

As described in *Circuit City,* the scope of the residual exemption, once open to debate, was limited by the Supreme Court to encompass only transportation workers engaged in interstate commerce. Thus, as laid out in *Kienstra,* the task before a court in determining whether the residual exemption applies is a relatively straightforward two-step process in line with the text of Section 1 of the FAA: 1.) are the class of workers in question transportation workers, and, if yes; 2.) are the class of workers in question engaged in interstate commerce?  In the instant case there is no

question that Uber drivers are transportation workers; the only question for this Court  as to the class (however defined), is are Uber drivers engaged in interstate commerce? Courts aiming to determine whether workers are engaged in commerce do not engage in a qualitative analysis of whether most of their work is interstate or not, but merely, whether as transportation workers, this class of workers engaged in interstate work.

The Seventh Circuit has held that truck drivers who hauled concrete from  Illinois,  across the Mississippi River to Missouri  a "few dozen" times out of "1500 to 1750 deliveries each year" were  engaged in interstate commerce as defined by 9 U.S.C. § 1. *Int'l Bhd. of Teamster Local Union 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 958 (7th Cir. 2012). This number represents somewhere in the range of 2.06%-4%[6] of all deliveries, firmly within the range of Uber trips, nationally, that cross state lines. In *Kienstra*, the Court of Appeals explicitly held that **"there is no basis in the text of §1 for drawing a line between workers who do a lot of interstate transportation work and those who cross state lines only rarely; both sorts of workers are 'engaged in foreign or interstate commerce.'" *Id*.** In analyzing whether Lyft drivers nationwide are a class of workers engaged in foreign or interstate commerce, Judge Abrams of the Southern District  held  that  the  Court  does  not  "see  any  basis  to  read  into  Section  One  the  words "*predominately* engaged in" or "*primarily* engaged in" interstate commerce." *Islam v. Lyft, Inc.*, 2021  WL  871417,  2021  U.S.  Dist.  LEXIS  43839,  at  *25  (S.D.N.Y.  Mar.  9,  2021)  (emphasis original). Similarly, in *Gonzalez v. Lyft*, Magistrate Judge Dickson held that "The [FAA] does not say 'engaged exclusively", "engaged primarily", "engaged routinely", or even 'engaged in a lot

---

[6] Deriving the percentage based on a "few" dozen, taken to mean  three to five dozen.

of' interstate commerce. Congress could have inserted any number of modifiers intended to express a baseline amount of activity. It did not." 2020 WL 7183573, 2020 U.S. Dist. LEXIS 231790 at *15 (D. N.J. Oct. 13, 2020), *aff'd*, 2021 WL 303024, 2021 U.S. Dist. LEXIS 17188 (D. N.J. Jan. 29, 2021).

To be sure, the Seventh Circuit's recent decision in *Wallace v. Grubhub Holdings, Inc.* did not abrogate the standard previously established by the Seventh Circuit in *Kienstra*; Then-Judge Barrett's decision indeed cites to *Kienstra* with approval three times, and says nothing to contradict it. Wallace's discussion of whether transportation in interstate commerce is a "central part" of the workers' job description does not perform the type of judicial amendment of Section 1 cautioned against in *Islam* and *Gonzalez*, *supra*, but merely serves to clarify that interstate transportation work must be a defined part the workers' job duties, and not merely an incidental to their work. In fleshing out this standard *Wallace* compares the truck drivers in *Kienstra* who only crossed state lines on 2-4% of their deliveries with a furniture account manager who may, on occasion, incidentally transport a piece of furniture across state lines. *See Hill v. Rent-a-Center*, 398 F.3d 1286, 1289-90 (11th Cir. 2005). Making this distinction, *Wallace* reminds us that the truck drivers in *Kienstra* were exempt from the FAA as transportation workers, while a furniture store account manager, who is not a transportation worker, is not. *See also, Islam* Decision, page 16 (holding "By way of illustration, any federal district judge would answer in the affirmative if asked whether or not she was "engaged in" conducting criminal trials, notwithstanding that most federal judges' dockets consist primarily of civil actions and the majority of criminal prosecutions are resolved by a guilty plea. Overseeing criminal trials is unquestionably a "central part of [a federal district judge's] job description," *Wallace*, 970 F.3d at 801.")

While the workers' status in *Kienstra* as truck drivers is necessary to make them transportation workers, it does not weigh on an analysis of whether they are engaged in interstate commerce. To be sure, the drivers in *Kienstra* could have been found not to have engaged in interstate commerce if they did not cross state lines; that is exactly why the Court needed to engage in the analysis of state line crossing. Nothing in *Kienstra* or *Wallace* even remotely suggests the workers in *Kienstra* were exempt from Section 1 because they drove trucks, as opposed to another type of vehicle, such as passenger vehicles driven by Plaintiffs. Because Uber drivers are transportation workers, and they perform interstate work at a rate at least equal to that of the drivers in *Kienstra*, they are transportation workers engaged in interstate commerce.

The Court's decision in this case is the only one rendered within this district to impose requirements not found in the text of the FAA for a worker to show exemption under the FAA. The Court totally failed to mention *Kienstra* at all, and as argued above, never did the relevant analysis of interstate rides nationally. Further, in relying on *Rogers v. Lyft, Inc.*, 452 F. Supp. 3rd 904 (N.D. Cal. Apr. 7, 2020) this Court cited to a case where there was no data presented about the extent to which drivers crossed state lines.

All other cases within this Circuit analyzing the question of when a transportation worker is engaged in interstate commerce have, in line with *Kienstra*, refused to impose further qualifications on the plain text of the FAA, such as those criticized in *Kienstra* and *Gonzalez*. *See*, *Islam v. Lyft* and *Haider v. Lyft*, *supra* (both finding Lyft drivers nationwide or New York City Lyft drivers to be transportation workers engaged in interstate commerce). *See also Burgos v. Northeast Logistics*, holding that "plaintiffs sufficiently alleged[d] that they were engaged in interstate transportation" where they did "drive across state lines in their employment as delivery

drivers." 2017 WL 10187756 (E.D.N.Y. Mar. 30, 2017)[7]. *See also Smith v. Allstate Power Vac. Inc.*, 482 F. Supp.3d 40, at 46-47 (E.D.N.Y. 2020), citing *Kienstra*, *supra*.

### V.   THE COURT ERRONEOUSLY OVERLOOKED PRECEDENT PRESENTED REGARDING THE MOTOR CARRIER EXEMPTION IN THE *FAIR LABOR STANDARDS ACT*

The Court's decision exhibited clear error by completely overlooking and therefore failing to apply controlling case law from the U.S. Supreme Court in determining the extent to which Uber drivers are engaged in interstate commerce.  This precedent was cited in Plaintiffs' Motion for Discovery which was part and parcel of Plaintiffs' opposition to Defendants' motion to compel arbitration.

In 1947, the U.S. Supreme Court in looking to interpret the exact phrase, "engaged in interstate commerce," for the purposes of determining whether an employer fell within the motor carrier exemption of the *Fair Labor Standards Act*, referenced the percentage of revenue that a trucking company derived from its interstate work. *Morris v. McComb*, 332 U.S. 422, at 427 (1947) (finding the employer to be engaged in interstate commerce where, *inter alia*, 4% of the company's revenue was derived from "transportation directly in interstate commerce.") As a trucking company, the business' work consisted entirely of the work done by its drivers. Thus  the analysis of whether the employer is engaged in interstate commerce is coterminous with an analysis of whether its drivers are engaged in interstate commerce. The Supreme Court in *Circuit City Stores v. Adams* held that courts must interpret the term "engaged in commerce" in an "objective and

---

[7] In *Burgos*, the record support for this proposition was Plaintiffs' declarations averring that they had performed interstate trips. *See*, 15-cv-06840 (E.D.N.Y.) (CVA)(CP), at Dkt. Nos. 45-49.  *E.g.*, Plaintiff Burgos' declaration noted that while working for Northeast Logistics he "frequently travelled outside of New York State to perform deliveries." Dkt. No. 45. Other plaintiffs could not recall specific dates when they travelled outside New York State, but noted that they were "required to be available" to do so. *Id*, at Dkt. ## 46, 47.

consistent" manner across statutes. 532 U.S. 105, 117 (2001). Accordingly, the Supreme Court's

holding in *Morris*, and its progeny, are directly on point in interpreting the term "engaged in

interstate commerce" for FAA purposes, especially as the FAA and the motor carrier exemption,

at the time the cases cited in this brief were decided, were both to be narrowly construed.  *See*,

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *accord, Chen v. Major League Baseball

Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015).

The Fourth Circuit Court of Appeals, citing to *Morris*, found a trucking company to be

engaged in interstate commerce, where the percentage total of its revenue derived from interstate

shipments over an eight-year period measured 9.7%, 8.1%, 1.2%, 5.1%, 1.5%, 2.7%, 3.3%, and

2.4%, for each year, respectively. *Brennan v. Schwerman Trucking Co.*, 540 F.2d 1200, 1203, n.

9 (4th Cir. 1976).   Numerous district courts have followed *Morris* in looking to revenue to

determine whether groups of workers were "engaged in interstate commerce." *See*, *e.g.*, *Resch v.

Krapf's Coaches, Inc.*, 2013 WL4603011, 2013 U.S. Dist. LEXIS 123438, at *26-27 (E.D. Pa.

Aug. 29, 2013), (finding company's transit division "significantly engaged in interstate

commerce" where revenue from interstate routes ranged 1% to 8.4% each year, over a four-year

period), *aff'd* 785 F.3d 869 (3d Cir. 2015); *Walters v. Am. Coach Lines of Miami, Inc.*, 569 F.

Supp.2d 1270 (S.D. Fla 2008) (finding transportation company engaged in interstate commerce

where 4% of its total revenues derived from interstate trips); *Garcia v. Fleetwood Limousine, Inc.*,

511 F.Supp.2d 1233 (M.D. Fla. 2007) ("The employer's overall business, including the number of

interstate trips made and the percentage of revenue from interstate trips, is relevant to whether the

employer is engaged in interstate transportation.") To be sure, Courts following *McComb* have

applied its holding in the passenger transportation context as well, including car services similar to Uber and Lyft.

Looking not only to the fact of interstate trips, and the percentage thereof—both of which are sufficient to establish a finding of engagement in interstate commerce here— another "way in which interstate travel can be a natural, integral and inseparable part of an employee's position is *when any employee may be required to perform interstate travel*, regardless of the actual time spent by employees individually on interstate travel. 'In the case of drivers, Courts often phrase the ultimate issue as *whether the employee could reasonably have expected to drive in interstate commerce.*'" *Kennedy v. Equity Transp. Co.*, 2015 U.S. Dist. LEXIS 143565, at *14-15 (N.D.N.Y. Oct. 22, 2015), *aff'd* 663 Fed. Appx 38 (2d Cir. 2016), *cert denied* 137 S. Ct. 2117 (2017). Under such analysis, a finding of engagement in interstate commerce is also warranted. *See also, Islam v. Lyft*, *supra*, at *29 (citing *Kennedy* in the FAA context). *See also*, *Williams v. Tri-State Biodiesel*, 2015 WL 305362, at *8, 2015 U.S. Dist. LEXIS 7926 (S.D.N.Y. Jan. 23, 2015) (Finding that a driver is engaged in interstate commerce when "the employee could reasonably have expected to drive in interstate commerce.").

The failure of the Court to mention either *Kienstra* or the Motor Carrier Exemption cases shows the Court overlooked critical precedent in its decision, resulting in clear error.

**VI.**     **THE COURT COMMITTED CLEAR ERROR IN ITS APPLICATION OF *UNITED STATES V YELLOW CAB*,  WHICH THE SUPREME COURT LIMITED TO ITS FACTS**

The Court further committed clear error in its application of *Yellow Cab,* and the Court's claim that the reasoning of *Yellow Cab* is "applicable here— the 'relationship to interstate transit [of the class of workers to which Plaintiffs belong] is only casual and incidental.' 332 U.S. 218, 231

(1947)". Memorandum and Order, page 15. Most crucially, the Court overlooked the fact that *Yellow Cab*'s analysis of engagement in interstate commerce concerned a workforce of taxi drivers that was, by regulation, foreclosed from every leaving Chicago's city limits, and thus crossing state lines. Accordingly, *Yellow Cab* has no bearing on a case such as this, in which Plaintiffs' have clearly alleged regular crossing of state lines by Uber drivers.

Further, in *United States v Yellow Cab*, 332 U.S. 218 (1947), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) the Court expressly limited its ruling that the taxi drivers at issue were not engaged in interstate commerce for purposes of antitrust law, stating:

> All that we hold here is that when local taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their **independent local service**, that service is not an integral part of interstate transportation. And a restraint on or monopoly of that general local service, **without more,** is not proscribed by the Sherman Act.

This statement, limiting the holding in *Yellow Cab* to its facts, was followed by a disclaimer by the Court that it was not establishing a rule that taxi cab service was outside of Sherman Act jurisdiction:

> We do not mean to establish any absolute rule that local taxicab service to and from railroad stations is completely beyond the reach of federal power or even beyond the scope of the Sherman Act. In *Stafford* v. *Wallace, supra*, 528, the Court made plain that nothing in the *Knight* case was authority for the proposition that "if such an agency [local cab service] could be and were used in a conspiracy unduly and constantly to monopolize interstate passenger traffic, it might not be brought within federal restraint." Likewise, we are not to be understood in this case as deciding that all conspiracies among local cab drivers are so unrelated to interstate commerce as to fall outside the federal ken. *A conspiracy to burden or eliminate transportation of passengers to and from a railroad station where interstate journeys begin and end might have sufficient effect upon interstate commerce to justify the imposition of the Sherman Act or other federal laws resting on the commerce power of Congress.*

Certainly, the disclaimer of any rule is evidence that the Supreme Court intended this decision to be narrowly construed. This Court's expansive reading of the holding in *Yellow Cab* is inconsistent with the Supreme Court's ruling as well as the facts and data supplied in Plaintiffs' opposition to the motion to Compel.

For example, looking at virtually the same facts as provided by Plaintiffs in this case, Judge Abrams, in *Islam v Lyft*, *supra*, addressed the application of *Yellow Cab* to the facts in that case, stating:

> The *Yellow Cab* decision was premised on the fact that the local taxicab service was "confined to transportation between any two points within the corporate limits of the City [of Chicago]," *id*. at 230–231, and that the taxi companies had "no contractual or other arrangement with the interstate railroads," *id*. at 231. Lyft rides, as noted above, have no such restrictions, and there is at least some evidence in the record of ridesharing companies' arrangements with airports and even airlines. *See* Dkt. 34 at 8 (discussing Lyft's partnership with Delta Airlines). Moreover, in light of *Waithaka*'s instruction to consider the "geographic footprint and nature of the business for which [workers] work," 966 F.3d at 22, and *Singh*'s direction to evaluate "information regarding the industry in which the class of workers is engaged," 939 F.3d at 228, it is fair to conclude that today's national ridesharing enterprises are not in the same league as local taxi companies with respect to the role they play in interstate commerce. Accordingly, the role Lyft and Uber drivers play in ferrying passengers to and from airports and train stations at the very least lends additional support to the Court's conclusion that they are, as a class of workers, "engaged in . . .interstate commerce." 2021 U.S. Dist. LEXIS 43839, at *36-37.

> Similarly, Judge Nathan, in *Haider et. al, v Lyft*, *supra*, held:

> "To be sure, *Yellow Cab* did not hold that all local activities of vehicles for hire involve interstate commerce. It distinguished between taxicab companies who contracted with railroads and those who only infrequently drove passengers to train stations. *See id.* at 228–32. Thus, taxicabs operating exclusively within one city do not engage in interstate commerce by making "casual and incidental" trips to train stations. *Id.* at 231.

> Lyft drivers' trips to air, train, and bus terminals are hardly incidental. Lyft does not dispute Islam's evidence that twenty-five percent of his trips began or ended at these hubs of interstate travel. Nor does it offer any evidence that this proportion is atypical". 2021 U.S. Dist. LEXIS, *11-12.

Additionally, the Court committed clear error in overlooking all of the facts regarding the "geographic footprint" of Uber with regard to interstate commerce, per *Waithaka*, *supra,* when analogizing the case at bar to *Yellow Cab* and holding: "the relationship to interstate transit [of the class of workers to which Plaintiffs belong] is only casual and incidental." *Id.* at 231. The national footprint of Uber's service is evident both with respect to millions of interstate trips performed by Uber drivers each year, and the fact that 15 percent of Uber's revenue comes from airport trips and (*See*, Pl's Memorandum in Opp. to Motion to Compel Arbitration, at 18), and 10.1 percent of national trips in 2019 began or ended at airports. *Capriole v. Uber Technologies*, 460 F. Supp. 3d. 919, 930 (N.D. Cal. 2020). The nation-wide information the parties provided to this Court as to the interstate trips all Uber drivers perform and are regularly expected to perform, demonstrate the kind of footprint Uber has, and renders it qualitatively different than the local taxi company at issue in *Yellow Cab*.

Based on the limited holding of *Yellow Cab*, as well as the facts presented to and overlooked by this Court, the Court committed clear error.

## CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Court reconsider its Memorandum and Order. Should the Court amend its decision as to the FAA exemption, Plaintiffs would renew their request to amend to add statutory claims, given the absence of futility of such amendment. Such amendment would be relevant to any subsequent determination on the state law arbitration question, which the court has yet to reach. Plaintiffs argue that in the absence of the FAA's application, there is no valid arbitration agreement given the clear choice-of-law provision, providing only for arbitration governed by the FAA, and not pursuant to any state law. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 919-21 (9th Cir. 2020), *cert. denied Amazon.com,*

*Inc. v. Rittmann*, 209 L. Ed. 121, __ S. Ct. __, 2021 WL 666403 (Feb. 22, 2021). "[W]here the parties have chosen the governing body of law, honoring their choice is necessary to ensure uniform interpretation and enforcement of that agreement." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir. 2004). "In short, if defendants wish to invoke the arbitration clauses in the agreements at issue, they must also accept the ... choice-of-law clauses in the agreements." *Id. See also Gentry v. Superior Court*, 42 Cal. 4th 443, 462 (2007) ("class actions may be needed to assure the effective enforcement of statutory policies") (citation omitted); *Brady v. Williams Capital Group, L.P.*, 14 N.Y.3d 459 (2010) (requiring analysis of arbitrability of statutory claims on a case-by-case basis to determine if statutory claims may be effectively vindicated by arbitration).

Dated: New York, New York
        April 5, 2021

                                        Respectfully submitted,

                                        MIRER MAZZOCCHI & JULIEN, PLLC

                                        By:/s/_____
                                        Jeanne Mirer and Ria Julien
                                        1 Whitehall, 16th Floor
                                        New York, NY 10004
                                        (212) 231-2235
                                        jmirer@mmsjlaw.com
                                        rjulien@mmsjlaw.com
                                        *Attorneys for Plaintiffs*


                                        ____/s/_____

                                        By: Zubin Soleimany
                                        New York Taxi Workers Alliance
                                        31-10 37th Avenue, Suite 300
                                        Long Island City, NY 11101
                                        718-706-9892
                                        zsoleimany@nytwa.org
                                        *Attorneys for Plaintiffs*