# NEW YORK TAXI WORKERS ALLIANCE

### AFL-CIO; Intl. Transport Workers' Federation

31-10 37TH AVE.
SUITE 300
LONG ISLAND CITY, NY 11101
TELEPHONE: (718) 706-9892

July 11, 2025

Hon. Magistrate Judge Robert W. Lehrburger
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

Re:    *Aleksanian et al. v. Uber Technologies*, *et al.*, 19-cv-10308(ALC)(RWL)

Dear Judge Lehrburger:

I represent, with co-counsel, Plaintiffs in the above-captioned matter. I write pursuant to the Court's local and individual rules, and the parties' Protective Order to request a pre-motion conference in anticipation of Plaintiffs' motion to challenge Defendants' designations of certain discovery responses as confidential. Initially, Defendants designated every document and interrogatory response produced as either "confidential" or "highly confidential—attorneys' eyes only." Pursuant to the Protective Order, Plaintiffs wrote Defendants outlining their challenges to Defendants' designations on June 20. Defendants provided a written response on June 26; the parties met and conferred regarding the designations on June 4, June 26, and July 10. Defendants withdrew confidential designations from certain documents and interrogatory responses. The parties still dispute several of the confidential designations.

**Disputed Document Designations**: Regarding documents, Plaintiffs dispute the designation of Uber's airport agreements as confidential. Plaintiffs asked if any portions of such agreements rendered them confidential and could simply be redacted; Defendants took the position that the agreements were highly confidential in their entirety. The nature of such agreements regarding Uber's access to airports is integral to an understanding of whether Uber drivers' trips to and from airports are in interstate commerce. Further, Uber's agreements with airports would already be subject to public disclosure under their respective state freedom of information laws as airport authorities are typically run as or by government agencies subject to the FOIL, or other state analogues.[1] Contracts with government entities are subject to general public disclosure under the FOIL. *See Bahnken v. N.Y. City Fire Dep't*, 17 A.D.3d 228 (1st Dep't 2005) (Contracts between ambulance services in 911 system and private hospitals subject to disclosure in the absence of any trade secret information that would cause serious harm if disclosed). Similar disclosure requirements apply in other states from which Uber is producing airport agreements. *See Wysong*

---

[1] *See, e.g.*, Port Authority of New York and New Jersey website: Public Records Filled Requests, available at https://www.panynj.gov/corporate/en/public-record-access/public-record-fulfilled-requests.html (Date accessed July 10, 2025) (showing fulfilled requests for, *inter alia*, contracts, leases, agreements, including agreements with ground transportation providers, *e.g.* Request 12700-C, at page 8 of the link cited in this footnote, available at https://pacorpredevblobstorage.blob.core.windows.net/board-documents/uploads/documents/freedom-of-information/foi-fulfilled-requests/12700-C.pdf (Date accessed July 10, 2025)).

1

*v. City of Dayton City Hall*, 2025-Ohio-1651, at *P21-23, 2025 Ohio Misc. LEXIS 172 (Ohio Ct. of Claims Apr. 30, 2025) (Producing contract between city and outside vendor); 65 P.S. § 67.102 (defining any "contract dealing with the receipt or disbursement of funds by an agency" as a category of public record, generally subject to disclosure under Pennsylvania law.

**Disputed Interrogatory Response Designations**: Initially, all of Uber's interrogatory responses were designated as confidential. Defendants wrote that they will remove confidential designation from several categories of interrogatory responses.[2] Nonetheless, Defendants have maintained confidential designations on entire categories of interrogatory responses, including responses to all interrogatories concerning airport trips, all interrogatories concerning drivers with 1500+ trips per year, all interrogatories concerning amount of time on trips, and all interrogatories concerning the amount of gross bookings associated with rides. None of Uber's interrogatory responses are properly designated as confidential. Consistent with the Protective Order, "[w]hen a confidentiality designation is contested, the party seeking to maintain confidential treatment for the challenged document will have the burden of establishing good cause for the continuation of that treatment." *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2021 U.S. Dist. LEXIS 126453, at *12 (S.D.N.Y. Jul. 7, 2021) (quotations omitted). "Where a party seeks to maintain the confidential treatment of business information on the ground that it is commercially sensitive and would cause harm if known by a competitor, the party must make 'a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant [continued] protection.'" *Koch v. Greenberg*, 2012 U.S. Dist. LEXIS 58608, at *6 (S.D.N.Y. Apr. 13, 2012), *quoting In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009).

Uber has not made any showing that disclosure of its responses would result in injury. Where similar, if not identical, information is already publicly available, it is unclear what harm, if any Uber would suffer from disclosure here, and Uber has not articulated any. Uber appears to have removed confidential designations from responses that overlap in part with responses produced in

---

[2] Defendants did not remove highly confidential designations from responses to the following interrogatories: Number of airport trips, nationwide and NYC (Aleksanian Rog. 3); On-trip time of all trips, nationwide and NYC (Aleksanian Rog. 4); On-trip time of all interstate trips, nationwide and NYC (Aleksanian Rog. 5); On-trip time of all airport trips (Aleksanian Rog. 6); Gross receipts for all trips, nationwide and NYC (Aleksanian Rog. 7); Gross receipts for interstate trips, nationwide and NYC (Aleksanian Rog. 8); Gross receipts for airport trips, nationwide and NYC (Aleksanian Rog. 9); All trips, interstate trips, and airports trips for drivers with 1500+ trips per year, nationwide and NYC (Aleksanian Rog. 17); All on-trip minutes for all trips, interstate trips, and airport trips for drivers with 1500+ trips per year, and 50+ trips per year, nationwide and NYC (Aleksanian Rog. 17); All airport trips for driver with 50+ trips per year, nationwide and NYC (Aleksanian Rog. 17); Gross bookings for all trips, interstate trips, airport trips for drivers with 1500+trips per year, and 50+ trips per year, nationwide and NYC (Aleksanian Rog. 17); requesting information about the scope of Uber's territories (Aleksanian Rog. 21); average on-trip time of all trips, nationwide and NYC (Aleksanian Rog. 23); average on-trip time of interstate trips, nationwide and NYC (Aleksanian Rog. 24); percentage of total trips completed by driver with 50+ trips, nationwide and NYC (Lama Rog. 1); number and percentage of total trips completed by drivers with 1500+ trips, nationwide and NYC (Lama Rog. 5); number of drivers with 1500+ trips, nationwide and NYC (Lama Rog. 6); Percentage of drivers who performed an airport trip, nationwide and NYC (Lama Rog. 13); Percentage of drivers with 50+ trips who performed an airport trip; percentage of drivers with 50+ trips who performed an interstate trip, nationwide and NYC (Lama Rog. 14); Percentage of drivers with 1500+ trips who performed an airport trip; percentage of drivers with 1500+ trips who performed an interstate trip, nationwide and NYC (Lama Rog. 16); median number of interstate trips performed by all drivers, 50+, and 1500+, nationwide and NYC (Lama Rog. 17, 18, 22); Average length of trips in miles (Lama Rog. 23); Average length of interstate trips in miles (Lama Rog. 24).

other Section 1 cases;[3] however, Uber has not re-designated several categories of data which do not appear in any way distinguishable from the re-designated data in the potential for injury that would occur if such data were disclosed. For example, it is not clear how data on trips done by drivers with 1500+ trips poses a threat of injury in a way that disclosure of data on trips done by drivers with 50+ trips, which was disclosed in *Singh*, does not. Broadly, Uber has not articulated how disclosure of trip data relating to airport or interstate trips is commercially sensitive. Similarly, the percent of Uber's revenue from airport trips is already publicly disclosed. *See* Dkt. 34-19, Uber SEC Form 10-K, at 20; *see also id.*, at 52 for gross bookings data generally. Nor has Uber articulated how disclosure of on-trip time for interstate trips and all trips would be commercially sensitive or threaten injury, especially given that Uber already disclosed average trip lengths and durations in this case. *See* Dkt. 20, at 11. An understanding of the amount of time drivers spend engaged in interstate work is among the most crucial data points in this case's Section 1 inquiry. Importantly, all the confidentially designated data is 6-12 years old, and would be considered stale and unlikely to cause business harm. "Generally… a court will not protect several-year-old information without a specific explanation of the harm that would be caused by disclosure." *Koch v. Greenberg*, *supra*, at *13-14.

It bears noting that Uber seeks to maintain confidential designations on categories of data that were all identified by the Second Circuit as relevant to a future determination of the Section 1 issue: the percentage of drivers who perform interstate trips, Uber's revenue from interstate trips, numbers necessary for the calculation of the average number of interstate trips. Given the Court's stated interest in such data points, they would ultimately be necessary for a determination of the Section 1 issue and would thus be judicial documents to which public access is generally favored. *See, e.g.*, *Lugosch v. Pyramid Co.*, 435 F.3d 110, at 119 (2d Cir. 2006). Although Uber has pointed to *Lowell v. Lyft*, 2024 WL 964625 (S.D.N.Y. Mar 5. 2024), for the proposition that rideshare trip data must remain confidential, *Lowell* is inapposite and the cited decision does not discuss the merits or the underlying nature of the ride data which remained under AEO designation. In that case, Lyft users challenged Lyft's provision of wheelchair-accessible service, therefore data relating to regular, non-accessible ride services remained confidential as it did not relate to Plaintiffs' claims and Lyft argued such data was "irrelevant to the matters to be decided by the Court." 17-cv-06251-PMH-AEK (S.D.N.Y.), Dkt. 413, at 3. Here, the Second Circuit specifically requested much of the data Uber seeks to keep confidential, and it will bear directly on the Section 1 issue. Defendants' continued designation of these interrogatory responses as confidential is inappropriate.

**Additional Designations**: The parties have also conferred regarding documents in Defendants' June 26 productions also designated confidential. These include "mass communications" emails that would have been sent broadly to drivers and consumers. An expectation of confidentiality should not attach to any mass communications, which are, in effect, public advertising sent via-email. Similarly, driver training documents that explain basic functions of the driver app, designed to be distributed broadly, do not warrant confidential designation.

 Respectfully submitted,

---

[3] In *Golightly v. Uber Techs.*, 21-cv-03005-LJL (S.D.N.Y), interrogatory responses on trip data were filed on the docket at Dkt. 45-1, without redaction. In *Singh v. Uber Techs.*, 16-cv-03044-FLW-DEA (E.D. Pa), at Dkt. 62-6, Uber provided interrogatory responses on similar trip information without confidential designation.

_/s/Zubin Soleimany_
Zubin Soleimany
New York Taxi Workers Alliance
31-10 37th Ave. Ste. 300
Long Island City, 11101
 (347) 470-4755
zsoleimany@nytwa.org

cc: All counsel of record via CM/ECF