## GIBSON DUNN

July 15, 2025

Lee R. Crain
Partner
T: +1 212.351.2454
M: +1 347.924.2815
lcrain@gibsondunn.com

**BY ECF**
The Honorable Robert W. Lehrburger
U.S. District Court, S.D.N.Y.
500 Pearl St.
New York, New York 10007

Re:   *Aleksanian et al. v. Uber Technologies, Inc., et al.*, 19-cv-10308 (ALC) (RWL)

Dear Judge Lehrburger:

We represent Defendants Uber Technologies Inc. and Uber USA LLC (jointly, "Uber") and write to oppose Plaintiffs' request for a pre-motion discovery conference (Dkt. 119) pursuant to Section II.D of Your Honor's Individual Practices.

Despite the multiple items raised in Plaintiffs' letter, there is only one dispute remaining for the Court's attention[1]: Plaintiffs' request for data concerning on-app time spent in airport holding lots and virtual queues. That data is irrelevant, and producing it would be unduly burdensome and disproportionate to the needs of the case. Plaintiffs' request also violates Rule 33's 25-interrogatory limit. Uber respectfully requests that the Court deny Plaintiffs' request for additional discovery in this pre-answer phase of the case.

***Relevant Background.*** As the Court knows, in January 2024, Judge Carter ordered the parties to conduct "limited" discovery into whether Plaintiffs (drivers who use Uber's rideshare platform) are exempt from the FAA under Section 1. Dkt. 84. That exemption excludes from arbitration "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Over the more than 18 months since, the parties have engaged in significant discovery efforts. The discovery in this case has far exceeded the scope of any other Section 1 case Uber has litigated (all of which resulted in the granting of Uber's motions to compel arbitration[2]). As of the June 26 document-production and written-discovery deadline, Uber produced, over a seven-year period, 3,726 documents totaling 10,893 pages, 293 pages of discovery responses, and 139 metrics of data.

Plaintiffs' latest data request is rooted in Uber's first-in-first-out (FIFO) system at airports. Once a driver enters the FIFO zone, they are placed in a virtual queue to be offered an airport pick-up based on when they entered the queue. To enter the virtual queue, drivers must be in designated holding lots (similar to a cellphone waiting lot). Plaintiffs claim they need to know the amount of

---

[1] Uber has now served supplemental RFP responses representing whether responsive documents were located and, if so, the responsive Bates range(s). Before discovery closes, Uber will amend its response to Mr. Khatra's Interrogatory 10 to include the applicable years as Plaintiffs requested. The parties are also conferring on stipulations concerning the final two issues Plaintiffs raised, and Uber has conveyed its comments on Plaintiffs' draft language.

[2] *See, e.g.*, Dkt. 60; *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 557 (3d Cir. 2023), *as amended* (May 4, 2023); *In re Grice*, 974 F.3d 950, 958 (9th Cir. 2020); *Mahwikizi v. Uber Techs., Inc.*, 2023 WL 2375070, at *3-4 (N.D. Ill. Mar. 6, 2023); Dkt. 51, *Golightly v. Uber Techs., Inc.*, 1:21-cv-03005-LJL (S.D.N.Y. Dec. 21, 2022); *Davarci v. Uber Techs., Inc.*, 2021 WL 3721374, at *12 (S.D.N.Y. Aug. 20, 2021); *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 932 (N.D. Cal. 2020), *affirmed* 7 F.4th 854, 865 (9th Cir. 2021).

time that drivers who use Uber's platform spent in virtual queues or holding lots between 2013 and 2019 to show that those drivers are engaged in interstate commerce under Section 1.

*Analysis.* This Court should deny Plaintiffs' latest discovery motion for three reasons.

*1. Numerosity.* Plaintiffs' latest data request is facially infirm under Federal Rule of Civil Procedure 33's limit of 25 interrogatories per party. Over a year ago, Plaintiffs served 50 compound interrogatories comprising *hundreds* of independent, discrete subparts. Exs. A, B; *see Rouviere v. DePuy Orthopaedics, Inc.*, 2020 WL 1080775, at *2 n.2 (S.D.N.Y. Mar. 7, 2020) (defining subparts as those portions of an interrogatory that can be "answered fully and completely without answering" any other subpart of the question). Following substantial negotiation and good-faith compromise, Uber responded to 927 individual, discrete interrogatory subparts. Plaintiffs later served an additional 14 compound interrogatories, Exs. C, D, and Uber responded to 46 more individual, discrete subparts, despite the clear numerosity defect. To date, Uber has provided 139 data metrics and 293 pages of discovery responses to dozens of compound interrogatories. Under the Federal Rules, Plaintiffs are not entitled to seek additional responses, and Uber is not required to answer more interrogatories. The Court should deny Plaintiffs' request on numerosity grounds. *See, e.g.*, *Kennedy v. Cont. Pharmacal Corp.*, 2013 WL 1966219, at *1 (E.D.N.Y. May 13, 2013) (denying motion to compel where party's "interrogatories, while sixteen in number, contain twenty-seven subparts and are therefore excessive in number").

*2. Unduly burdensome and disproportionate.* Even if numerosity weren't an issue here, requiring Uber to produce the additional data Plaintiffs seek would be overly burdensome and disproportionate to the needs of the limited discovery ordered in this case.

Producing the data Plaintiffs seek would be challenging and complex. Uber maintains two types of data in the ordinary course of business: structured data and unstructured data. Structured data is generated in regular intervals over time from unstructured data; maintained by highly specialized data engineers; utilized by Uber for reporting and analytics; and—important here— readily query-able. All data produced in limited discovery to date has been derived from structured data. Unstructured data, on the other hand, is raw, messy, and difficult to query. Transforming unstructured data into usable formats takes substantial resources. The data Plaintiffs are now requesting was not maintained during the relevant time period as structured data in the ordinary course of business. To produce it therefore—*i.e.*, to convert it to usable structured data—would require substantial time and effort, as Uber has explained to Plaintiffs on multiple meet-and-confers. *See A & R Body Specialty and Collision Works, Inc. v. Progressive Cas. Ins. Co.*, 2014 WL 5859024, at *6 (D. Conn. Nov. 10, 2014) (denying motion to compel data as unduly burdensome where the defendant could not "query" the sought data and would have to manually create it).

In response, Plaintiffs have noted that Uber in another Section 1 case (*Golightly*) produced data concerning trips where the "drop off" location was a train or bus transit hub in New York City (*e.g.*, Grand Central Terminal or Penn Station). That prior production is inapposite for two reasons. *First*, the *Golightly* data concerned drop-off locations, which Uber actively observes in the ordinary course of business—not unobserved 2013–2019 location-specific on-app time. The fact

that Uber produced drop-off location data in *Golightly* therefore has nothing to do with how easily it can convert 2013-2019 on-app holding lot unstructured data into usable structured data in this case. *Second*, even if the data produced in *Golightly* had to be converted from structured to unstructured data to produce, the burdens in that case were far less than those in this one, meaning it was more proportional to the needs of that case to undertake such a conversion. *See, e.g.*, *Golightly*, 2021 WL 3539146, at *4 (recognizing discovery was "narrow" with *five* document requests and *eleven* interrogatories). Requiring Uber to do the same here after it undertook the efforts it has would be unduly burdensome and disproportionate.

*3. Relevance.* The parties are conducting limited discovery into whether "interstate movement of" passengers is "a central part" of the work drivers who use the Uber platform perform. *See* Dkt. 84; *Singh*, 67 F.4th at 557; *see also Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (explaining the Section 1 residual clause applies only to "transportation workers"—those who are "actively engaged in transportation" of goods or people "via the channels of foreign or interstate commerce"). An airport trip has nothing to do with that inquiry. For that reason, courts have repeatedly held that information concerning airport trips and—even more attenuated—airport holding lots is irrelevant to the Section 1 inquiry. As Judge Caproni has explained, "the fact that airports allow passengers to hail an Uber from within airport boundaries does not transform Uber drivers from local transportation providers to part of the continuous flow of interstate commerce." *Davarci*, 2021 WL 3721374, at *14; *see also Mahwikizi*, 2023 WL 2375070, at *5 ("[T]he fact that Uber contracts with airports for access to nearby staging lots and requires drivers to pick up riders at designated areas at the airport does not alter the essentially local nature of Uber drivers' work."). The Third Circuit agreed, noting that "rideshare trips to airports are done as part of drivers' 'independent local service'"—not indicative of interstate travel. *Singh*, 67 F.4th at 562 ("Plaintiffs have pointed to no examples of a rideshare app which allows passengers to buy a single ticket that includes both flight and rideshare."). The data Plaintiffs seek is similarly irrelevant. Their request should be denied.

Plaintiffs also argue Uber should be required to produce on-app holding-lot and virtual-queue data from a period that long postdates the claim period in this case—2013–2017. Although it's true that Uber began to maintain structured data concerning on-app time in airport holding lots and virtual queues after 2019, that later-in-time structured data is even more irrelevant to this case. The question of how long certain drivers may have spent on their Uber apps in holding lots in 2020, 2021, 2022, and later has no bearing on whether Plaintiffs are exempt under Section 1 for work performed between 2013 and 2017. *See* Dkt. 83 ¶ 2 (delineating claims period); *see, e.g.*, *Mbaye v. RCI Hospitality Holdings, Inc.*, 2024 WL 1181831, at *2 (S.D.N.Y. Mar. 19, 2024) (denying motion to compel "to the extent [p]laintiffs seek information or production of documents outside the relevant time period"). Relatedly, requiring Uber to produce such irrelevant data is disproportionate to the needs of the case.[3] *See* Dkt. 105-1.

---

[3] Plaintiffs also note Uber produced in this case a few documents that post-date 2019 to suggest that Uber has conceded discovery from that period is relevant. That is wrong. Uber produced those documents in response to Plaintiffs' improper requests for "clone" discovery from other Section 1 cases. Uber objected to those requests but ultimately provided the responsive documents in the interest of compromise—regardless of time period. Uber never conceded those documents are relevant. They are not.

July 15, 2025
Page 4

Respectfully submitted,

Lee R. Crain
Partner

cc: All Counsel of Record