# GIBSON DUNN

Lee R. Crain
Partner
T: +1 212.351.2454
M: +1 347.924.2815
lcrain@gibsondunn.com

January 27, 2026

**BY ECF**
The Honorable Robert W. Lehrburger
U.S. District Court, S.D.N.Y.
500 Pearl St.
New York, New York 10007

Re:     *Aleksanian et al. v. Uber Technologies, Inc., et al.*, 19-cv-10308 (ALC) (RWL)

Dear Judge Lehrburger:

In accordance with the Court's Order (Dkt. 164), Defendants Uber Technologies, Inc. and Uber USA LLC (jointly, "Uber") respectfully submit this letter in further support of Uber's request to maintain under seal narrowly tailored portions of 18 documents filed in connection with Uber's pending Motion to Compel Arbitration.[1]

This sealing dispute turns on two straightforward principles. *First*, a strong presumption of public access applies only to material that is relevant to the Court's resolution of Uber's pending motion. *See Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (For material that "[is] *not* relevant to the performance of [the] judicial function, no presumption of public access attaches."). This presumption does not attach to much of the material Uber seeks to seal. *Second*, even where the presumption applies, it yields to narrowly tailored sealing necessary to protect confidential commercial information and competitive interests like Uber's. *See Haley v. Tchrs. Ins. & Annuity Ass'n*, 2020 WL 3618573, at *1, *2 (S.D.N.Y. July 2, 2020) (Lehrburger, J.) (sealing material that, if disclosed, would provide "insight into [defendant's] confidential business operations and could cause competitive harm"). Plaintiffs' opposition misapplies both principles and blurs the distinction between what is before the Court on Uber's motion to compel and what theoretically could be relevant to the Section 1 inquiry for purposes of discovery.

**1. Discovery Material Is Not Entitled To A Strong Presumption of Public Access**. It is undisputed that a material portion of the data Uber seeks to seal is not cited anywhere in the parties' briefing, 56.1 statements, or declarations submitted in connection with Uber's motion. That material entered the record only because Plaintiffs filed entire sets of interrogatory responses as exhibits, rather than the excerpts they cited and relied on. It is also undisputed that under settled Second Circuit law, irrelevant material that would not reasonably influence the Court's resolution of Uber's motion carries little or no presumption of public access. *See Brown*, 929 F.3d at 49.

To oppose sealing, Plaintiffs argue that certain material is highly relevant to resolution of Uber's motion even though neither party cited it in the approximately 250 pages of briefing. According to Plaintiffs, the mere fact that the Second Circuit encouraged discovery on certain topics transforms every datapoint responsive to those topics into a judicial document relevant to the Court's decision. That position conflicts with binding precedent. *See U.S. v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (documents "passed between the parties in discovery, lie entirely beyond the presumption's reach" and "stand[] on a different footing" than motions or other documents that

---

[1] Plaintiffs' letter misrepresents the material that Uber seeks to seal. Uber is not requesting to seal, for example, "all data related to airport trips." Uber refers the Court to the chart at Docket 162-1 for the material Uber seeks to seal.

affect a court's decision) (cleaned up).  Plaintiffs' position would also create a perverse and unworkable rule:  a party could manufacture public access rights by filing irrelevant confidential discovery materials even if the materials have nothing to do with a pending motion before a court. Irrelevant material that was not cited in either party's motion papers is "not tied to the disposition of [the] matter" and thus "do[es] not trigger a strong presumption in favor of access."  *See Brunckhorst v. Bischoff*, 2024 WL 4276201, at *2-3 (S.D.N.Y. Sep. 24, 2024) (sealing documents irrelevant to summary judgment determination that contained "business strategy information, confidential financial documents, pricing figures, and . . . items of a sensitive nature").  If anything, this irrelevant material should be stricken from the record.  *See Brown*, 929 F.3d at 47 n.12.

**2. Uber's Trip Data And Commercial Agreements Are Confidential And Competitively Sensitive**.  Regardless of whether Uber's trip data and commercial agreements are relevant to Uber's motion, any presumption of access is outweighed by Uber's concrete competitive interests.

*Trip Data*.  The trip data at issue consists of nonpublic statistics reflecting drivers' and riders' use of Uber's platform in specific markets between 2013 and 2019.  Uber's data engineers prepared this data specifically for this case using a proprietary, internal system.  The data reflects quantitative details about the platform's performance, market organization, capacity, and driver and rider behavior—precisely the type of confidential commercial information courts in this District routinely protect.  *Brunckhorst*, 2024 WL 4276201, at *2-3; *see also Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (sealing "confidential information about Microsoft's business models. . . quantitative details about Microsoft's user base for certain offerings[, and] quantitative details about usage of specific product features").

Plaintiffs argue that Uber failed to articulate "particular and specific" harm if the data is made public.  The harm here is neither abstract nor speculative.  Disclosure of Uber's proprietary trip data would give competitors valuable insight into Uber's financial performance, organization of distinct markets, airport activity, and the time drivers spend operating on Uber's platform. Competing rideshare companies could leverage this sensitive information to the detriment of Uber by, for example, using Uber's performance data to better position themselves in the rideshare market.[2]  That remains true even if the data reflects past performance (as data often does); courts have repeatedly recognized that historical business data can reveal enduring trends and strategies that competitors can extrapolate to present day.  *See Mission Wellness Pharmacy LLC v. Caremark LLC*, 641 F. Supp. 3d 673, 680 (D. Ariz. 2022) (sealing seven-year-old data about "discounts and dispensing fees" that were "mechanisms that [defendant] currently uses" because a competitor "might be able to project the [current] discount" and "glean something about [defendant's] current practices."); *c.f. Grand River Enters. Six Nations, Ltd. v. King*, 2009 WL 222160, at *4-5 (S.D.N.Y. Jan. 30, 2009) (denying motion to compel discovery of 10-year-old information that was "competitively" and "highly sensitive" because it identified "trends and strategies" with potential future applications).  Accordingly, Courts have sealed Uber's historical business

---

[2] Plaintiffs' suggestion that the interstate-trip data cannot be competitively sensitive because Uber has characterized such trips as "happenstance" conflates the legal merits of the Section 1 inquiry with the commercial sensitivity of Uber's proprietary metrics.  Uber's legal position about the nature of interstate trips on its platform has no bearing on whether granular, nonpublic data concerning the use and operation of its platform should be sealed.

information.  *See, e.g.*, *Crawford v. Uber Techs., Inc.*, 616 F. Supp. 3d 1001, 1003 n.1 (N.D. Cal. 2022), *aff'd*, 2023 WL 7123772 (9th Cir. Oct. 30, 2023) (sealing 3-year-old budget information); *Ehret v. Uber Techs., Inc.*, 2015 WL 12977024, at *2-3 (N.D. Cal. Dec. 2, 2015) (sealing 3-year-old information concerning Uber's proprietary business strategy and trip data).  Access to Uber's historical performance data could give competitors an unfair edge.[3]

Plaintiffs also argue that sealing is improper because similar data is allegedly available to the public through the NYC TLC website and Uber's 2019 SEC filing.  That argument is wrong. Plaintiffs have not identified the public disclosure of a single proprietary datapoint Uber seeks to seal in this case.  Instead, the NYC TLC website links to voluminous raw trip datapoints for rideshare companies.  That data is compiled for regulatory purposes, without parameters or context that would allow the public to synthesize or meaningfully analyze it in a competitive way.  Public disclosure of that raw information is not equivalent to disclosure of the proprietary, targeted datapoints Uber prepared in this case and now seeks to seal.  Nor do Uber's SEC filings disclose the data that Uber prepared for this case—namely, total gross bookings for *all* trips, interstate trips, and airport trips between 2014 and 2019 for drivers using Uber's platform in the United States. The cited SEC filing provides a specific subset of different data—international gross bookings for 2018 and 2019.  Indeed, if Uber's proprietary data were publicly available, the parties would not have had to spend 19 months negotiating discovery parameters for access to it.

*Uber's commercial agreements.*  Uber's agreements with airports and an airline contain sensitive commercial terms and "provide valuable insights into [the] business practices" of Uber *and* its counterparties.  Either party's competitors or future counterparties could "seek to exploit" those terms—regardless of when those agreements were executed.  *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2025 WL 1305150, at *5 (S.D.N.Y. May 6, 2025) (sealing more than 10-year-old information that "retain[ed] their competitive sensitivity for the foreseeable future") (cleaned up); *Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("[c]onfidential business information dating back even a decade or more" may retain competitive sensitivity).[4]  Plaintiffs do not dispute that disclosure of its agreement with a third-party airline poses a competitive risk to the airline.  *See* Dkt. 163 at 3.

As to Uber's agreements with airports, Plaintiffs' reliance on state freedom of information laws ("FOIL") does not defeat sealing.  Plaintiffs do not argue that the specific agreements Uber seeks to seal here *have* been disclosed in response to a FOIL request.  Instead, Plaintiffs merely reference fulfilled FOIL requests for agreements executed by *other* companies allegedly "similar to Uber," which have no bearing on whether the terms of *Uber's* commercial agreements with third parties have been or should be disclosed to the general public.  Plaintiffs also continue to ignore the fact that FOIL expressly exempts sensitive records—like Uber's commercial agreements—whose disclosure would cause substantial competitive harm.  *See, e.g.*, N.Y. Pub. Off. Law § 87(2)(d).

---

[3] To the extent the Court requires additional information, Uber is willing and able to provide a declaration and fuller briefing beyond that available in the letter motion format to explicate further the confidential and competitively sensitive nature of Uber's historical data and commercial agreements.

[4] Plaintiffs do not dispute that personally identifying information should remain under seal.  *See* Dkt. 163 at 3.

January 27, 2026
Page 4

Respectfully submitted,

Lee R. Crain
Partner


cc:    All Counsel of Record